Philadelphia, Wilmington, & Baltimore Railroad Co. *v.* Howard.

manifest object will justify such a construction, and that the collector was right in refusing the permit to the plaintiff to land and warehouse the coal in question at Wareham.

As regards the small balance of the plaintiff's deposit which remained in the collector's hands after the payment of the legal duties, it is no ground for reversing the judgment of the Circuit Court. The defendant offered to pay it, but the plaintiff refused to receive it. The money placed in the hands of the collector for the estimated duties was a deposit in trust for the United States for the amount that should be found actually due; and for the plaintiff for the balance, if any should remain after the duties were paid. And as the plaintiff refused to receive this balance when tendered, it continues a deposit in the hands of the defendant with the plaintiff's consent; and he cannot subject the collector to the costs and expenses of a suit until he can show that it is wrongfully withheld.

The judgment of the Circuit Court is therefore affirmed with costs.

### *Order:*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Massachusetts, and was argued by counsel, on consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.

---

## THE PHILADELPHIA, WILMINGTON, AND BALTIMORE RAILROAD COMPANY, PLAINTIFFS IN ERROR, *v.* SEBRE HOWARD.

In Maryland, the clerk of a county court was properly admitted to prove the verity of a copy of the docket-entries made by him as clerk, because, by a law of Maryland, no technical record was required to be made.

And, moreover, the fact which was to be proved being merely the pendency of an action, proof that the entry was made on the docket by the proper officer, was proof that the action was pending, until the other party could show its termination.

Where the question was, whether or not the paper declared upon bore the corporate seal of the defendants, (an incorporated company,) evidence was admissible to show that, in a former suit, the defendants had treated and relied upon the instrument, as one bearing the corporate seal. And it was admissible, although the former suit was not between the same parties; and although the former suit was against one of three corporations, which had afterwards become merged into one, which one was the present defendant.

The admission of the paper as evidence only left the question to the jury. The burden of proof still remained upon the plaintiff.

Philadelphia, Wilmington, & Baltimore Railroad Co. *v.* Howard.

The evidence of the president of the company, to show that there was an understanding between himself and the plaintiff, that another person should also sign the paper before it became obligatory, was not admissible, because the understanding alluded to did not refer to the time when the corporate seal was affixed, but to some prior time.

In order to show that the paper in question bore the seal of the corporation, it was admissible to read in evidence the deposition of the deceased officer of the corporation, who had affixed the seal, and which deposition had been taken by the defendants in the former suit.

If the defendants had relied upon the paper in question to defeat the plaintiff in a former suit, they are estopped from denying its validity in this suit. It was not necessary to plead the estoppel, because the state of the pleadings would not have justified such a plea.

Where the covenant purported to be made between two persons by name, of the first part, and the corporate company, of the second part, and only one of the persons of the first part signed the instrument, and the covenant ran between the party of the first part and the party of the second part, it was proper for the person who had signed on the first part to sue alone; because the covenant enured to the benefit of those who were parties to it.

In this particular case, a covenant to finish the work by a certain day, on the one part, and a covenant to pay monthly on the other part, were distinct and independent covenants. And a right in the company to annul the contract at any time, did not include a right to forfeit the earnings of the other party, for work done prior to the time when the contract was annulled.

A covenant to do the work according to a certain schedule, which schedule mentioned that it was to be done according to the directions of the engineer, bound the company to pay for the work, which was executed according to such directions, although a profile was departed from which was made out before the contract was entered into.

So, also, where the contract was, to place the waste earth where ordered by the engineer, it was the duty of the engineer to provide a convenient place; and if he failed to do so, the other party was entitled to damages.

Where the contract authorized the company to retain fifteen per cent. of the earnings of the contractor, this was by way of indemnity, and not forfeiture; and they were bound to pay it over, unless the jury should be satisfied that the company had sustained an equivalent amount of damage by the default, negligence, or misconduct of the contractor.

Where, in the progress of the work, the contractor was stopped by an injunction issued by a court of chancery, he was not entitled to recover damages for the delay occasioned by it, unless the jury should find that the company did not use reasonable diligence to obtain a dissolution of the injunction.

If the company annulled the contract merely for the purpose of having the work done cheaper, or for the purpose of oppressing and injuring the contractor, he was entitled to recover damages for any loss of profit he might have sustained; and of the reasons which influenced the company, the jury were to be the judges.

THIS case was brought up, by writ of error, from the Circuit Court of the United States, for the District of Maryland.

It was a complicated case, the decision of which involved numerous points of law, as will be seen by the syllabus prefixed to this statement.

There were six exceptions to the admissibility of evidence taken during the progress of the trial in the Circuit Court. The plaintiff below then offered eleven prayers to the court, and the defendant, thirteen. The court laid aside all the prayers and embodied its instructions to the jury in thirteen propositions.

The facts of the case, out of which all these points of law arose were the following:

Philadelphia, Wilmington, & Baltimore Railroad Co. *v.* Howard.

Prior to 1836, there existed in Maryland a company called the Delaware and Maryland Railroad Company, which, by an act of the legislature, passed on the 14th of March, 1836, was united with the Wilmington and Susquehannah Railroad Company; the two united taking the name of the latter.

It will be perceived that this company is not *eo nomine*, one of the parties to the present suit, and it may as well be now mentioned that afterwards a further union of companies took place by virtue of a law of Maryland, passed on 20th of January, 1838. The following companies were united, viz.: The Baltimore and Port Deposit Railroad Company; The Wilmington and Susquehannah Railroad Company; The Philadelphia, Wilmington, and Baltimore Railroad Company;— the three, thus united, taking the name of the latter company, which was the plaintiff in error.

On the 12th of July, 1836, whilst the Washington and Susquehannah Railroad Company had a separate existence, a contract was entered into between them and Howard for the prosecution of the work in Cecil county, in the State of Maryland. Two copies of this paper were extant. They were substantially alike except in this; that one of them (the one referred to as marked B) was sealed by Sebre Howard, and was signed by James Canby, President, with his private seal affixed. It was not sealed by the Railroad Company. The other (referred to as marked A) was signed and sealed by Howard, and signed also by Canby, as president. It also bore an impression which purported to be seal of the company.

This latter paper was the basis of the present suit, which was an action of covenant. Some of the points of law decided in the case refer to the paper, which makes it necessary to insert it, viz.:

Agreement between Sebre Howard and Hiram Howard, of the first part, and the Wilmington and Susquehannah Railroad Company, of the second part.

The party of the first part, in consideration of the matters hereinafter referred to and set out, covenants and agrees, to and with the party of the second part, to furnish and deliver, at the proper cost of the said party of the first part, the building materials which are described in the annexed schedule, to the said party of the second part, together with the necessary workmanship and labor on said railroad, and at such times, and in such quantities, as the party of the second part shall designate; and faithfully, diligently, and in a good and workmanlike manner, to do, execute and perform the office, work, and labor in the said schedule mentioned.

And the party of the second part, in consideration of the premises, covenants and agrees to pay the party of the first part the sums and prices in the said schedule mentioned, on or before the first day of November next, or at such other · times and in such manner as therein declared.

Provided, however, that in case the party of the second part shall at any time be of opinion that this contract is not duly complied with by the said party of the first part, or that it is not in due progress of execution, or that the said party of the first part is irregular, or negligent; then, and in such case, he shall be authorized to declare this contract forfeited, and thereupon the same shall become null; and the party of the first part shall have no appeal from the opinion and decision aforesaid, and he hereby releases all right to except to, or question the same, in any place or under any circumstances whatever; but the party of the first part shall still remain liable to the party of the second part, for the damages occasioned to him by the said non-compliance, irregularity, or negligence.

And provided, also, that in order to secure the faithful and punctual performance of the covenants above made by the party of the first part, and to indemnify and protect the party of the second part from loss in case of default and forfeiture of this contract, the said party of the second part shall, notwithstanding the provision in the annexed schedule, be authorized to retain in their hands, until the completion of the contract, fifteen per cent. of the moneys at any time due to the said party of the first part. Thus covenanted and agreed by the said parties, this twelfth day of July, 1836, as witness their seals.

SEBRE HOWARD,          [SEAL.]

[SEAL.]

[SEAL.]

[SEAL.]

JAMES CANBY, *President.*     [SEAL.]

Sealed and delivered in the presence of—

WILLIAM P. BROBSON.          [SEAL.]

### *Schedule referred to above.*

The above-named Sebre Howard and Hiram Howard contract to do all the grading of that part of section No. 9, in the State of Maryland, of the Wilmington and Susquehannah Railroad, which extends from station No. 191, to the end of the piers and wharf in the River Susquehannah, opposite Havre de Grace, according to the directions of the engineer, and according to the specification hitherto annexed, for the sum of twenty-six cents per cubic yard for every cubic yard excavated; the said section to be completed in a workmanlike manner, viz., one mile from

station No. 191, by October 15, 1836, and the residue by November 1, ensuing.

They also contract to make the embankment at the river from the excavation of the road, provided the haul shall not exceed a distance of eight hundred feet from the eastern termination of the said embankment; all other portions of the hauling together not to exceed an average of eight hundred feet; and for any distance exceeding the said average the price is to be one and a half cents per cubic yard for each hundred feet.

The party of the second part contracts to pay to the said Sebre and Hiram Howard, the said sum of twenty-six cents per cubic yard in monthly payments, according to the measurement and valuation of the engineer, retaining from each payment fifteen per cent. until the final completion of the work. If any additional work, in consequence of water, grubbing, or hard material, is required on the side ditch or ditches, or through Cowden's woods, the same is to be decided by the engineer, as in case of rock, &c.

*Specification of the manner of grading the Wilmington and Sus-quehannah Railroad.*

Before commencing any excavation or embankment, the natural sod must be removed to a depth of three inches from the whole surface occupied by the same, for the purpose of afterwards sodding the slopes thereof, and all stumps, trees, bushes, &c., entirely removed from the line of road as directed by the engineer. In cases of embankment a grip must be cut about one foot deep for footing the slopes, and preventing them from slipping. The embankments must be very carefully carried up in layers of about one foot in thickness, laid in hollow form, and in so doing, all hauling or wheeling, whether loaded or empty, must be done over the same. The slopes of excavations and embankments will be one and a half horizontal to one perpendicular, except where otherwise ordered by the engineer, and are to be sodded with the sods removed from the original surface.

Side ditches and back drains must be cut wherever ordered by the engineer, at the same price as the common excavation. The side ditches will on an average be about nine feet wide on top, and about two feet deep, and will extend along a great portion of the road. In most places where embankments are to be made, the cutting of the adjacent parts is about sufficient for their formation, and as the contractor is supposed to have examined the ground and profiles, and to have formed his estimates accordingly, no allowance will be made for extra hauling. Where more earth is required than is procured from the excavations, the contractor shall take it from such places as the engineer may

direct, the cost per cubic yard being the same as the other parts. Where there is any earth from the excavations, more than is required for the embankments, it shall be placed where ordered by the engineer.

All the estimates will be made by measuring the excavations only.

Loose rocks, boulders, ironstone, or other pebbles, of a less weight than one fourth of a ton, are to be removed by the contractor at the same price as the common excavation; but in cases of larger size, or for blasting, the price shall be a matter of special agreement between the contractors and engineer, and if the former should not be willing to execute it for what appears to the engineer a fair price, the latter may put the same into other hands.

No extra allowance will be made for cutting down trees, grubbing, bailing, or other accidental expenses.

Measurements and estimates will be taken about once a month, and full payment will be made by the directors, after deducting 15 per cent., which deduction on each estimate will be retained until the entire contract is completed, which must be on or before the·

It is distinctly understood by the contractors that the use of ardent spirits among the workmen is strictly forbidden.·

WILLIAM STRICKLAND,
*Chief Eng. of the Wil. & Sus. R. R.*
(*Indorsed.*) — *S. and H. Howard's Contract.*

Sebre Howard went to work alone, Hiram Howard never having signed or participated in the contract.

On the 17th of September, 1836, he was served with an injunction issued by the High Court of Chancery of Maryland, against the Maryland and Delaware Railroad Company, its agents and servants, commanding them to desist from the prosecution of a particular part of the work.

On the 30th of October, 1836, the injunction was dissolved.

On the 18th of January, 1837, the directors of the company passed the following resolution:

· A communication was received from the chief engineer, representing that the contract of S. & H. Howard for section No. 9, was not in due progress of execution, and recommending that it should be forfeited, which was read, and on motion of Mr. Gilpin, the following resolution was adopted, viz.: .

" Whereas, a contract was duly executed between S. Howard (acting for himself and H. Howard,) and the Wilmington and Susquehannah Railroad Company, bearing date the 12th day of July last, whereby the said S. & H. Howard contracted, for the

consideration therein mentioned, to do all the grading of that part of section No. 9, of the said railroad which extends from station No. 191, to the end of the piers and wharf in the River Susquehannah, opposite Havre De Grace, according to the directions of the engineer of the said railroad, and to the specification thereto annexed, and to complete the same by the time therein mentioned; and whereas, the times appointed for the completion of said contract have elapsed, and the work is not yet completed, and the party of the second part is of the opinion that the contract is not duly complied with by the party of the first part, and that the said contract is not in due progress of execution : — Therefore, resolved, that the said contract be, and the same is hereby declared to be forfeited."

A suit was then brought in Cecil County Court, by Sebre and Hiram Howard, against the Wilmington and Susquehannah Railroad Company, which was finally disposed of at October term, 1847. The result of the suit is shown in the following copy of the docket-entries, which were admitted in evidence by the Circuit Court, but the admissibility of which constituted the subject of the first bill of exceptions.

*In Cecil County Court, October Term,* 1847.

S. & H. Howard, use of Charles Howard, use of Hinson H. Cole, $5,000, use of Daniel B. Banks, $1,000,

*v.*

The Wilmington and Susquehannah Railroad Company.

Procedendo and record for the court of appeals; leave to amend pleadings; nar. filed; pleas filed; similiter; replication and demurrer; leave to defendant to amend pleadings; amended pleas; replication and demurrer; rejoinder; agreement; leave to defendants to issue commission to Wilmington, Delaware; agreement filed; jury sworn; jury find their verdict for the defendants, under instructions from the court, without leaving their box; December 3d, 1847, judgment on the verdict.

In testimony that the above is a true copy of the docket-entries taken from the record of Cecil County Court, for October term, 1847, I hereunto set my hand, and the seal of said court affix, this 12th of November, A. D. 1849.

R. C. Hollyday, [SEAL.]
*Clerk of Cecil County Court.*

This suit having thus failed, Sebre Howard, a citizen of the

State of Illinois, brought an action of covenant in his own name, in the Circuit Court of the United States for the District of Maryland. The declaration set out the following breaches which were filed short by agreement of counsel.

1st breach. In not paying the estimate of the first of January.

2d breach. Damages resulting from the injunction sued out by John Stump.

3d breach. For not building the bridge over Mill creek, and the culvert in Cowden's woods, whereby the plaintiff was damaged by the necessity of making circuitous hauls.

4th breach. For omission seasonably to build the wharf and cribs on the Susquehannah, whereby the plaintiff was prevented from hauling the earth from the excavations made by him upon said road.

5th breach. For refusal to point out a place or places to permit plaintiff to waste or deposit the earth from the excavations of the road.

6th breach. For refusal to pay for the overhaul.

7th breach. For fraudulently declaring contract forfeited, and thereby depriving plaintiff of gains which would otherwise have accrued to him on the completion of the contract, and refusal to pay the amount of the 15 per cent. retained by the defendants under the several estimates.

8th breach. For not paying said fifteen per cent. so retained upon the several estimates.

The defendants put in the following pleas :

*Pleas.* And the said defendant, by William Schley, its attorney, comes and defends the wrong and injury, when, &c., and says, that the said supposed agreement in writing, in the said declaration mentioned, is not the deed of this defendant. And of this the said defendant puts itself upon the country, &c.

And the said defendant, by leave of the court here, for this purpose first had and obtained, according to the form of the statute in such case made and provided, for a further plea in this behalf, says, that the said supposed agreement in writing, in the said declaration mentioned, is not the deed of the Wilmington and Susquehannah Railroad Company, in the said declaration mentioned. And of this the said defendant puts itself upon the country, &c.

And the said defendant, by leave of the court here for this purpose first had and obtained, according to the form of the statute in such case made and provided, for a further plea in this behalf to the said declaration, says, that the said Wilmington and Susquehannah Railroad Company, in the said declaration mentioned, did not make, or enter into, an agreement in writing with the said plaintiff, sealed with the corporate seal of the

said Wilmington and Susquehannah Railroad Company, in manner and form as the said plaintiff hath above in his said pleading alleged. And of this the said defendant put itself upon the country, &c.    WILLIAM SCHLEY,
*Attorney for Defendant.*

It was agreed that leave was given to the defendants to give in evidence any matter of defence which could be specially pleaded.

Upon this issue the cause went to trial, when the jury, under the instructions of the court, which will be hereafter set forth, found a verdict for the plaintiff for twenty-four thousand four hundred and twenty-five dollars and twenty-four cents damages, with costs.

It has been already mentioned that the defendants took six exceptions, during the progress of the trial, to the admission of evidence. They were as follows:

*First Exception.* At the trial of this cause, the plaintiff, to maintain the issue on his part joined, proved by Richard T. Hollyday, a competent witness, that he is the present clerk of Cecil County Court; and that the following is a true copy of the docket-entries under the seal of Cecil County Court in a case heretofore depending in that court.

(Then followed the docket-entries above quoted.)

The plaintiff then offered to read said docket-entries in evidence to the jury, for the purpose of showing that such a suit was depending in said court, as shown by said docket-entries, and for no other purpose; but the defendant, by its counsel, objected to said docket-entries as legal and competent evidence in this cause, and insisted that the same ought not to be read to the jury as evidence in this cause, for the purpose for which they were offered, or for any other purpose. But the court overruled the said objection, and permitted the said docket-entries to be read in evidence in this cause, and the same were accordingly read to the jury. To the admission of which said docket-entries in evidence, the defendant, by its counsel, prayed leave to except.

*Second Exception.* The plaintiff then further proved, by said Richard T. Hollyday, that he was present in the month of December, 1847, at the trial in Cecil County Court of the said cause, specified in the said docket-entries referred to in the first bill of exceptions, and being shown the paper marked A, of which the following is a true copy:

(The paper marked A has been already described in this statement.)

He was asked whether or not he had ever seen said paper before, and particularly whether or not he had seen the paper A

exhibited as a paper of defendant's, and in the possession of the counsel for the defendant in said case, specified in said docket-entries at the said trial in December, 1847; but the defendant, by its counsel, objected to said question, and to the admission in evidence of any answer to the same, on the ground that that suit was between different parties; but the court overruled the objection to said question, and to the answer to the same, and permitted the said witness to answer the same, who deposed that the plaintiff in said case, at said trial in Cecil County Court, relied upon another paper, shown to the witness marked B, and which is as follows:

(The paper marked B has been heretofore described in this statement.)

But that one of the counsel for the defendant had then and there in his possession, at said trial, the said paper, marked A, and handed the said paper to Judge Chambers as the real contract in the case, and spoke of it as the real and genuine contract between the parties.

To which said question to said witness and to the answer given by the said witness thereto, the defendant by its counsel prayed leave to except.

*Third Exception.* The said Richard T. Hollyday being further examined, stated that whether the impression on said paper, marked A, is or is not the seal of the Wilmington and Susquehannah Railroad Company, he does not know, not having seen at any time the seal of the said company; but that the witness thinks that said paper A was offered in evidence by the defendant in said cause, in Cecil County Court, as the deed of said company, and that evidence of that fact that it was such deed was offered by said defendant. The plaintiff then offered to read in evidence to the jury the said paper marked A, but the defendant, by its counsel, objected to the admissibility of said paper in evidence to the jury. But the court overruled the said objection, and permitted the said paper to be read in evidence to the jury, as *primâ facie* proved to be the deed of the said Wilmington and Susquehannah Railroad Company to the admission of which said paper in evidence, the said defendant, by its counsel, excepted.

*Fourth Exception.* The plaintiff then further proved by Francis W. Ellis, a competent witness, that he is a member of the bar of Cecil County Court, and that he was present at said court in December, 1847, at the trial of said case, specified in said docket-entries set out in the first bill of exceptions; that at said trial no evidence whatever was given by the defendant; but that, at the conclusion of the plaintiff's case, an objection was made by the counsel for the defendant in the case, to the plaintiff's

right of recovery, and he thinks the ground of objection was that the action should not have been brought in the names of Sebre Howard and Hiram Howard. The said witness further stated that, at said trial, one of the counsel for the defendant in that case had in his hands the paper marked A, offered in evidence in this case by the plaintiff, and that he stated, not only to those around him at the bar, but also in conversation with the presiding judge, that said paper was the real contract between the parties.

*Evidence of Henry Stump.* The plaintiff further proved by Henry Stump, a competent witness, that he was present at the trial, in December, 1847, in Cecil County Court of the said case, specified in the said docket-entries set out in the first bill of exceptions, and that he was so present as one of the counsel for said plaintiff, and that he took part in the trial. That at said trial the said paper, marked A, was offered in evidence by the defendant, and relied on by the counsel for the defendant in that case, the same having been proved by a witness, to be sealed with the corporate seal of said defendant; and that the objection to the right of recovery in that case was based on said paper, marked A, as a deed; and that the production and proof of said paper A, as the sealed deed of the defendant, at once satisfied him that said suit could not be maintained, and that he therefore suffered the verdict to be taken for the defendant.

The plaintiff then read the agreement of union, dated 5th February, 1838, between the Wilmington and Susquehannah Railroad Company, the Baltimore and Port Deposit Railroad Company, and the Philadelphia, Wilmington, and Baltimore Railroad Company, under the last-mentioned name. He then offered to read in evidence a copy of an injunction, issued from the Court of Chancery of Maryland, on the 13th September, 1836, at the suit of John Stump against the Delaware and Maryland Railroad Company. The defendant objected to the admissibility of the copy so offered; but the objection was overruled, and the court permitted said paper to be read in evidence to the jury, "for the purpose of showing the fact that an injunction had issued, which it was admitted had been served on Howard, on the 17th September, 1836, and as furnishing evidence of excuse, on the part of said Howard, for his failure to complete the work to be done, under his contract, by the time therein specified."

*Fifth Exception.* After evidence, on various points, had been given on both sides, the defendant offered to prove by James Canby, "that when the two papers, respectively marked A and B, were signed by him and by Sebre Howard, and sealed by the latter, that it was then understood between them, that both said

27 *

papers were also, thereafter, to be signed and sealed by Hiram Howard." The plaintiff objected to the evidence, so offered to be given; and the court sustained the objection, and refused to allow the question to be propounded to the said witness, or to be answered by said witness, and rejected as inadmissible the evidence so proposed to be given.

[Mr. Canby had previously proved that he was then the president of the Wilmington and Susquehannah Railroad Company, and that both the papers, A and B, were signed and sealed by him, and by Sebre Howard. He had also proved that, although the impression on paper A was the seal of said company, yet that it was never placed there by his authority, or by the authority of the board. He had also proved that the section was let to Sebre and Hiram Howard. Evidence had also previously been given, that all the estimates were made in the names of S. & H. Howard; and that all receipts, for payments made, were given in their joint name.]

The object of the defendant, by the evidence proposed to be given, was to confirm the evidence of the said witness, that the seal of the company impressed on paper A, was not placed there by his authority, or by the authority of the board; and further, and, more especially, to show that, in point of fact, said paper A was not intended, sealed or unsealed, as it then stood, to be the complete and perfect contract of the company; and that the actual execution of the contract by Hiram Howard, also, was a condition precedent to its existence as the contract of the company.

*Sixth Exception.* This exception covered upwards of an hundred pages of the printed record. The evidence offered by the plaintiff and objected to by the defendant, consisted principally of so much of the record of the case in Cecil County Court, as preceded the appeal, in that case, to the Court of Appeals; and it was offered by the plaintiff below, for the purpose of introducing, as evidence against the defendant below, the deposition of William P. Brobson, taken in that case, on behalf of the defendant in that case, and whose subsequent decease was proved. The defendant objected to the admission of said deposition in evidence in this case. The court, however, admitted the deposition, and it was accordingly read. The deposition was taken 7th April, 1840.

*Seventh Exception.* This included an exception to the refusal of the court to grant the prayers offered by the counsel for the defendants, and also an exception to the instructions given by the court to the jury. It has been already stated that the court laid aside the prayers offered by the counsel on both sides, and gave its own instructions to the jury; but by way of illustration,

the prayers offered by the counsel for the plaintiff are here inserted also.

## Plaintiff's Prayers.

1st. If the jury believe that Sebre Howard made with the defendants the contract in question, and went on to perform the work under the same, and so continued the same until the month of January, 1837, when the company declared his contract forfeited, and that the engineers of the company made an estimate of the work so done, showing a balance due the contractor, Howard, of                , then plaintiff is entitled to recover that sum, with interest.

2d. If the jury believe the facts stated in the foregoing prayer, and further find that the plaintiff was stopped by the officers of the defendant from proceeding in the work, which stoppage was induced by the injunction issued and given in evidence; and if they further find that the defendant had neglected to procure any title to the land worked upon until after such injunction was laid and dissolved, then the plaintiff is entitled to recover such amount of damages as the jury may find from the evidence that he sustained by reason of his being turned off from said work.

3d. If the jury find the facts stated in the preceding prayers, then by the true construction of the contract the plaintiffs are entitled to the excess of overhaul, resulting from going off the company's lands, and descending to and ascending from Mill creek, in the construction of the embankment east of Mill creek.

4th. If the jury find all the facts stated in the preceding prayers, and further find that the plaintiffs were obstructed in the performance of their work by the absence of proper cribs at the River Susquehannah, where plaintiff was at work at the time; and if they further find that he was, in consequence of such nonperformance by defendants, turned away from this work, then plaintiffs are entitled to recover such amount as the jury may find he sustained damage by reason of such omission of defendant.

5th. That by the true construction of the contract in this case, the defendants were bound to furnish ground to waste the earth upon which was to be dug out of the hills through which the road was to be cut by plaintiff; and if they find that the defendants refused to do so, plaintiff is entitled to recover such sum as the jury may find he sustained loss by not being furnished with ground to waste such earth upon.

6th. That plaintiff is entitled to recover for any and every overhaul exceeding an average of 800 feet.

7th. That if the jury find that the plaintiff faithfully per-

formed his work under this contract, and was only prevented from finishing it by the misconduct of the defendant, then plaintiff is entitled to recover such sum as he would have made by completing said contract.

8th. If the jury believe that the defendant wilfully and fraudulently, and without any reasonable or proper cause, declared the contract given in evidence forfeited, then the plaintiffs are entitled to recover, notwithstanding such declaration of forfeiture, for any damages arising to them, after such declaration of forfeiture, in consequence thereof.

9th. That by the true construction of the contract given in evidence, it was the duty of the defendant to have all the culverts and bridges upon the route of said road, within the limits of plaintiffs' contract, prepared for the free pursuance of his work; and if the jury believe that defendants or persons employed by them neglected so to do, they, defendants, are liable for such damages as plaintiffs show they sustained in consequence of such omission or neglect of defendant.

10th. That by the true construction of this contract, it was the duty of defendants to prevent or remove all obstructions to the plaintiffs' work which it was within their power to remove; and it was their duty to have obtained a right to work on the road before said plaintiffs commenced their work; and if they find that, in consequence of legal proceedings against said company, plaintiffs were obstructed and hindered in the performance of their work, and thereby seriously damaged, that plaintiffs are entitled to recover for such damage.

11th. That plaintiffs are entitled to recover for all work and labor actually done and performed under said contract, including the 15 per cent. retained upon the several estimates, after deducting the payments shown to have been made.

And the defendant offered the following.

### Defendant's Prayers.

1st. The defendant, by its counsel, prays the court to instruct the jury that if they shall find, from the evidence in this cause, that the seal upon the contract, offered in evidence by the plaintiff, dated 12th July, 1836, was not affixed to the said contract by the authority of the Wilmington and Susquehannah Railroad Company, and was affixed without the authority of the defendant in this suit, and was so affixed after the execution of the agreement of union, offered in evidence by the plaintiffs, dated the 5th of February, 1838, the plaintiff is not entitled to recover upon it in this suit.

2d. If the jury shall find, from the evidence in this cause, that at the trial in Cecil County Court, in December, 1847, of the case of Sebre Howard and Hiram Howard against the Wilmington and Susquehannah Railroad Company, spoken of in their testimony, by Mr. Hollyday, Mr. Ellis, Mr. Stump, and Mr. Scott, the plaintiffs in said suit offered in evidence to the jury, in support of the issue joined on their part, the contract offered in evidence in this cause, marked exhibit B, and shall further find, from the evidence in the cause, that the defendant in said suit offered no evidence whatever in support of the issue joined on its part, and that the counsel for the defendant in that suit, when the plaintiffs offered to read in evidence the contract, marked B, objected to the admissibility of the same in evidence upon the issue joined in said suit, upon the ground that whereas the plaintiffs in that suit declared on an alleged contract, made by the said plaintiffs with the said defendant in that suit, yet the said paper, so offered to be read in evidence by the said plaintiffs, being executed only by said Sebre Howard, and under his seal, was the contract alone of said Sebre Howard, and was not the same contract alleged by the plaintiffs in the pleadings in that case; and shall further find, from the evidence in the cause, that this was the only objection made and argued in the trial of said cause on the part of the defendant, and was the only point then and there decided by the said court, then the reliance on said objection does not estop or debar the defendant in this suit from denying that the paper, marked exhibit A, now offered in evidence in this suit by the plaintiff, is not the deed of the Wilmington and Susquehannah Railroad Company, even if the jury shall find, from the evidence in the cause, that the said paper A was then and there in court, in the possession of the defendant's counsel in that suit, and was spoken of by him, as stated by the witnesses, as the real contract between the parties; provided, they shall also find, from the evidence in the cause, that the counsel who appeared for the defendant in said suit were then wholly ignorant of the fact that said seal had been placed on the said contract, without any authority, as aforesaid.

3d. If the jury shall find, from the evidence in the cause, that the work done on the 9th section of the Wilmington and Susquehannah Railroad on and after the 12th day of July, 1836, so far as done by the plaintiff, Sebre Howard, was so done by said plaintiff as one of the firm of Sebre and Hiram Howard, and that all the estimates were made out as in favor of said firm, and received and receipted for by the plaintiff, so far as any moneys were received by him from the said company in the

name and on behalf of said firm; and that the plaintiff, in his dealings and transactions with said company, professed to act as one of said firm, and for and on behalf of said firm, and never notified the said company or any of its officers, whilst engaged in work on said road, that he was not acting as a member of said firm, and for and on behalf of said firm, then the plaintiff is not entitled to recover in this case upon the first breach by him assigned in his declaration.

4th. If the jury shall find, from the evidence in the cause, that the resolution of the board of the Wilmington and Susquehannah Railroad Company, dated 18th January, 1837, offered in evidence in this cause, was duly passed by said board, and shall not find from the evidence in the cause that the same was fraudulently passed by said board, or by said company, then the plaintiff is not entitled to recover on the 7th breach of his declaration.

5th. If the jury shall find with the defendant on the fourth prayer, and shall also find, from the evidence in the cause, that notice was given on the same day, to the plaintiff in the suit, of the passage of said resolution, then the said contract was thereby rendered null so far as concerned any liability thereunder on the part of the defendant; and that the plaintiff is not entitled to maintain this suit.

6th. If the jury shall find, from the evidence in the cause, that the first mile of said section No. 9 was not finished on or before the 15th day of October, 1836, and was not, in fact, finished at any time, nor accepted by the defendant as fully and completely graded by the plaintiff, or by the said firm of Sebre Howard and Hiram Howard; and shall further find, from the evidence, that the alleged excuses, alleged in pleading by the plaintiff, were not in any respect the cause of, or contributory to the failure on the part of the said plaintiff, or of the said plaintiff and said Hiram Howard, to finish the same in the time limited for that purpose in said contract, then the plaintiff is not entitled to recover in this case on said first breach in his said declaration.

7th. If the jury shall find, from the evidence, that the injunction issued by John Stump, offered in evidence in this cause, was issued without any justifiable cause, and without any basis in right, and that the issuing of said injunction was not based on any actual omission of duty on the part of said company, then the plaintiff is not entitled to recover on the second count of his declaration.

8th. If the jury shall find, from the evidence in the cause, that the plaintiff was contractor on another section of the road of the said company, and that said former section was completed by him before the making of the contract offered in evi-

dence in this case; and shall further find, that in the execution of said former contract the plaintiff provided bridges and other modes of intercommunication from one part of his work to another, without any complaint; and shall further find that it was the known usage of said company to leave to the contractors the business of construction of their bridges so as to pass with materials and excavation from one part of their work to another, and that such is the known and uniform usage of other public works, then the plaintiff is not entitled to recover on the second breach of his declaration.

9th. If the jury shall find, from the evidence in the cause, that the plaintiff, at the time he was stopped by the assistant engineer, Mr. Farquhar from throwing more earth against the outer crib of the embankment at the river, might readily and conveniently have deposited many thousand cubic yards of earth within the limits of said embankment, if he had chosen so to do; and that the plaintiff perversely and stubbornly refused so to do; then the plaintiff is not entitled to recover on the 4th breach of his declaration.

10th. If the jury shall find, from the evidence, that the excavations made by the plaintiff, in the month of December, 1836, were needed by the defendant for the embankment at the river; and shall also find that the same could have been conveniently deposited there by the plaintiff, and that the plaintiff knew these facts, then the plaintiff is not entitled to recover on the 5th breach of his declaration.

11th. If the jury shall find that fair and proper estimates were made by defendant for all the overhaul of earth made by the plaintiff, over the average haul of 800 feet, then the plaintiff is not entitled to recover on the 6th breach of his declaration.

12th. If the jury shall believe that, at the time of the execution of the agreement, the road to be excavated and graded was staked out and marked upon the ground, and that a profile was shown, showing the depth of excavation to be made, and the height of the embankments, and that afterwards the plan of the road was altered and changed, by which the excavations were to be deeper and wider, and some of the embankments higher and some lower, to suit the altered plan of the road, and that the work done by the plaintiff, and for which he claims damages, was in grading the road according to the altered plan, then the plaintiff is not entitled to recover in this action.

13th. If the jury shall believe that all the work done in pursuance of the agreement stated in the declaration was done by Sebre and Hiram Howard, and not by Sebre Howard alone, that then the plaintiff is not entitled to recover.

The court thereupon rejecting the respective prayers on both sides, gave the jury the following instructions:

*Court's Instructions to the Jury.*

SEBRE HOWARD
*v.*
THE PHILADELPHIA, WILMINGTON, AND
BALTIMORE RAILROAD COMPANY.

1st. If the corporate seal of the Wilmington and Susquehannah Railroad Company was affixed to the instrument of writing upon which this suit is brought, with the authority of the company, while it had a separate existence for the purpose of making it at that time, and as it then stood the contract of the company, then the said instrument of writing is the deed of the said corporation, although it was never delivered to the plaintiff nor notice of the sealing given to him; and although no seal was affixed by the corporation to the duplicate copy delivered to him; and the defendant in the present action is equally bound by it, and in like manner.

2d. If the jury find from the evidence that this instrument of writing was produced in court, and relied upon by the present defendant, as a contract under the seal of the Wilmington and Susquehannah Railroad Company, in an action of *assumpsit* brought by Sebre and Hiram Howard against the last-mention-[ed] company in Cecil County Court; and that the said suit was decided against the plaintiffs upon the ground that this instrument was duly sealed by the said corporation as its deed, then the defendant cannot be permitted in this case to deny the validity of the said sealing, because such a defence would impute to the present defendant itself a fraud upon the administration of justice in Cecil County Court.

3d. If upon either of these grounds the jury find the instrument of writing upon which this suit is brought to be the deed of defendant, then the plaintiff is entitled to recover in this suit any damage he may have sustained by a breach of the covenants on the part of the corporation; but if they find that it is not the deed of the defendant upon either of these grounds, then their verdict must be for the defendant.

4th. The omission of the plaintiffs to finish the work within the times mentioned in the contract, is not a bar to his recovery for the price of the work he actually performed; but the defendant may set off any damage he sustained by the delay, if the delay arose from the default of the plaintiffs.

5th. If the defendant annulled this contract, as stated in the testimony, under the belief that the plaintiff was not prosecuting

the work with proper diligence, and for the reasons assigned in the resolution of the board, they are not liable for any damage the plaintiff may have sustained thereby, even although he was in no default, and the company acted in this respect under a mistaken opinion as to his conduct.

6th. But this annulling did not deprive him of any rights vested in him at that time, nor make the covenant void *ab initio*, so as to deprive him of a remedy upon it for any money then due him for his work, or any damages he had then already sustained.

7th. The increased work occasioned by changing the width of the road and altering the grade having been directed by the engineer of the company under its authority, was done under this covenant, and within its stipulations, and may be recovered in this action, without resorting to an action of *assumpsit*.

8th. If the jury find for the plaintiff upon the first or second instructions, he is entitled to recover the amount due on the work done by him in December, 1836, and January, 1837, according to the measurements and valuation of the engineer of the company, and cannot go into evidence to show that they were erroneous, or that he was entitled to a greater allowance for overhaul than the amount stated in the estimates of the engineer.

9th. Also, if from any cause, without the fault of the plaintiff, the earth excavated could not be used in the filling up and embankments on the road and at the river, it was the duty of the defendant to furnish a place to waste it. And if the company refused, on the application of the plaintiff to provide a convenient place for that purpose, he is entitled to recover such damages as he sustained by the refusal, if he sustained any; and he is also entitled to recover any damage he may have sustained by the delay of his work or the increase of his expense in performing it, occasioned [by] the negligence, acts, or default of the defendant.

10th. Also, the plaintiff is entitled to recover the fifteen per cent. retained by the company, unless the jury find that the company has sustained damage by the default, negligence, or misconduct of the plaintiff. And if such damage has been sustained, but not to the amount of the fifteen per cent., then the plaintiff is entitled to recover the balance, after deducting the amount of damage sustained by the company.

11th. The corporation was not bound to provide bridges over the streams to enable the plaintiff to pass conveniently with his carts from one part of the road to another.

12th. The decision of the Court of Appeals is conclusive evidence that the injunction spoken of in the testimony, was

not occasioned by the default of the defendant; and the plaintiff is not entitled to recover damages for the delay occasioned by it, unless the jury find that the company did not use reasonable diligence to obtain a dissolution of the injunction.

13th. If the jury find that the resolution of the company annulling the contract was not in truth passed for the reasons therein assigned, but for the purpose of having the remaining work done upon cheaper terms than those agreed upon in the contract with the plaintiff, or for the purpose of oppressing and injuring the plaintiff, then he is entitled to recover damages for any loss of profit he may have sustained by the refusal of the company to permit him to finish the work he had contracted to perform, if he sustained any.

The defendant, by its counsel, prayed leave to except, in respect of all and each of the prayers offered on the part of the defendant, to the court's refusal to grant said several prayers respectively, and also prayed leave to except to the instructions given by the court to the jury, and to each one of said instructions, severally and respectively, and prayed that the court here would sign and seal this, its seventh bill of exceptions, according to the form of the statutes in such case made and provided; and which is accordingly done this 16th day of November, 1850.

R. B. TANEY, [SEAL.]
U. S. HEATH, [SEAL.]

Upon all these exceptions the case came up to this court, and was argued by *Mr. Schley*, for the plaintiffs in error, and *Mr. Nelson* and *Mr. Johnson*, for the defendant in error.

The reporter has not room to notice the arguments of Mr. Schley, for the plaintiffs in error, upon the points of evidence brought up in the six first exceptions. The points made by him upon the 7th exception which included the rulings of the court as instructions to the jury, were the following:

1. The defendant in error cannot, as sole plaintiff in the action, maintain the suit. Whether the contract be the deed of the company, or a mere contract by parol, the covenantees or promisees, as the case may be, are Sebre Howard and Hiram Howard. This point, if well taken, is decisive of the case. Platt on Covenants, 18; Clement v. Henley, 2 Rolle's Abr. 22; Faits (F.) Pl. 2; Vernon v. Jefferys, 2 Stra. 1146; Petrie v. Bury, 3 Barn. & Cress. 353, (10 Eng. C. L. Rep. 108); Rose v. Poulton, 2 Barn. & Ad. 822, (22 Eng. C. L. Rep. 194); Scott v. Godwin, 1 Bos. & Pul. 67; Anderson v. Martindale, 1 East, 497; 1 Wms. Saunders, 201, f. and cases cited there; 1 Saunders, Pl. & Ev. 390; Wetherell v. Langton, 1 Exch. Rep. (Welsby, Hurl. & Gord.) 634; Foley v. Addenbrooke, 4 Q. B. 197,

Philadelphia, Wilmington, & Baltimore Railroad Co. v. Howard.

(45 Eng. C. L. Rep. 195); Hopkinson v. Lee, 6 Q. B. 964, (51 Eng. C. L. Rep. 963); Wakefield v. Brown, 9 Q. B. 209, (58 Eng. C. L. Rep. 217); Smith v. Ransom, 21 Wend. 204.

2. Unless the instrument, on which the action is founded, was, in fact, the deed of the Wilmington and Susquehannah Railroad Company, existing and operative as such, at the time of the union of the companies, an action of covenant cannot be maintained thereon, under the act of 1837, against the plaintiff in error. This point, if well taken, is decisive of the case.

3. If the last preceding proposition cannot be supported, in its full extent, still, upon the issue joined on the plea of *non est factum*, the plaintiff in error was not estopped, in law, from showing, that the paper was not, in fact, the deed of the Wilmington and Susquehannah Railroad Company. Wilson v. Butler, 4 Bing. N. Cas. 748, (33 Eng. C. L. Rep. 521); 1 Chitty's Plead. 603; and cases referred to in the notes.

4. The alleged production of the instrument, in the former suit, as a deed, would not, as matter of law, have been a fraud upon the administration of justice. Fraud or no fraud was a question of fact for the jury; and the application of the doctrine of estoppel ought to have been only upon the hypothesis, that the jury would find fraud, as a fact in the case. Accident, mistake, or surprise, might afford good ground for relief in equity, under very peculiar circumstances; but not for the application of estoppel *in pais*, in the absence of all intention to perpetrate a fraud. Reference is made to the various cases collected in the notes, in 44 Law Lib. 467; Conard v. Nicholl, 4 Pet. 295; United States v. Arredondo, 6 Pet. 716.

5. Even if the instrument was properly held to be the deed of the said company, yet, upon its true construction, time was of the essence of the contract. As the evidence clearly showed that the work was not performed, within the time limited in that behalf, and as there was no valid excuse for the default, the plaintiff below could not recover on the basis of said agreement. The proper form of action would have been *assumpsit*, upon a *quantum valebat*, for the work and labor done. This objection, if well taken, is decisive of the case. 1 Chitty's Plead. 340, and cases in note (4.) Watchman v. Crook, 5 Gill & Johns. 254; Watkins v. Hodges & Lansdale, 6 Harr. & Johns. 38; Bank of Columbia v. Hagner, 1 Pet. 455, 465; Longworth v. Taylor, 1 M'Lean's Rep. 395; Fresh v. Gilson, 16 Pet. 327, 334; Notes to Cutter v. Powell, Smith's L. C. 44 Law Lib. 17, 27; Gibbons's Law of Contracts, § 20 to § 47; and the cases there stated.

6. By force of the declaration of forfeiture, if validly made, (that is, if made under the circumstances stated as the hypothe-

sis of the fifth instruction,) the instrument was annulled, so far as it imposed any obligation upon the company. It could not be made, thereafter, the basis of an action against said company. Whilst conceding that the plaintiff below was not thereby deprived of any rights, completely vested in him before forfeiture; yet, it will be insisted, that the remedy, for the enforcement of such rights, is not by an action upon the instrument itself. *Assumpsit,* upon a *quantum valebat,* would have been the appropriate form of action, or relief could have been had in equity. It will, therefore, be respectfully insisted, that the sixth instruction, (which is founded on the same hypothesis as the fifth,) confounds the distinction between right and remedy. As to the first branch, vide Mathewson *v.* Lydiate, 5 Co. 22 b; s. c. Cro. Eliz. 408, 470, 546. As to second branch, 1 Chitty's Plead. 340, note 4; and cases there cited.

7. At all events, no action at law can be maintained against the plaintiff in error, on said annulled contract, (if validly annulled,) under the provisions of the act of 1837, c. 30. The forfeiture was declared on the 18th January, 1837. The act was passed on the 20th January, 1838. The instrument, therefore, was not a subsisting obligation of the Wilmington and Susquehannah Railroad Company, when the act of union was passed.

8. The claim to the fifteen per cent. retained by the company, was not a vested right, at the time the contract was annulled. Even if the sixth instruction was correct, the tenth instruction was erroneous. By the express terms of the agreement, the retained per cent. was not demandable until the completion of the contract. As the contract was never fulfilled by the contractor, the retained per cent. cannot be demanded, in an action based on the contract.

9. No recovery can be had, in this suit, in respect of any matter, not embraced in the contract. The subject-matter of the contract is to be limited and confined to the original plan of the work, as contemplated and established, when the contract was made. The obligation of the contract cannot be extended beyond the subject-matter. It had not the capacity of expansion or contraction, in accordance with any changes that the company might choose to make. Such additional work cannot be recovered in this action, as declared in the seventh instruction of the court, as work done under the covenant, and within its stipulations. 2 Stark. Ev. 768; Fresh *v.* Gilson, 16 Pet. 327.

10. There was no implied covenant on the part of the company, to procure a place for the waste of the surplus excavations, if any. But even if there was such implied covenant, there was no evidence in the cause from which it could reasonably be

inferred, that there was any excavation to be wasted as surplus.

11. The defendant below was not liable, in any manner, for the consequences of the injunction issued from chancery. The action was grounded on the alleged covenant; and the company, by its contract, had not warranted against interruption by the wrongful acts of any stranger. There is a wide difference between allowing the interruption to avail to the plaintiff below, as an excuse on his behalf for non-performance of the work within the prescribed time; and in making the delay of the company, in removing the cause of interruption, a ground of action, against the defendant below, as being a violation by the company of its covenant. Platt on Covenants, 601, (3 Law Lib. 269,) and case referred to in the notes there.

12. It will be insisted, that there was no evidence in the cause to justify the hypothesis of the thirteenth instruction of the court; that there was nothing from which the jury could legitimately find the facts of fraud and oppression, which are made the basis of that instruction.

13. And it will also be insisted, that the thirteenth instruction is erroneous, in this, that thereby it is laid down, that the loss of profits, if any, sustained by the plaintiff, is the proper measure of damages to be allowed by the jury, if they should find that the company improperly refused to permit the plaintiff to perform his work. Gilpins v. Consequa, Peters, C. C. Rep. 85 · Hopkins v. Lee, 6 Wheat. 109; Bell v. Cunningham, 3 Peters, 69, 86; 2 Greenleaf on Evidence, sect. 261; Fairman v. Fluck, 5 Watts, 516, 518; Story on Agency, 216; Short v. Skipwith, 1 Brock. Rep. 108.

14. The third prayer of the defendant ought to have been granted. Even if, in fact, or by estoppel, the paper A was the deed of the company; yet, if the work was really performed by, or on behalf of, the firm of S. & H. Howard, and the dealings and transactions of the company, in relation to said work, were with the said firm, (without notice of any proposed or actual separate performance of the work by the plaintiff, individually, as under said paper A,) then the defendant had a right to insist, that as the work was done by said firm, the privity of contract, in relation thereto, was with said firm, and that the estimate was payable only to the firm, under the paper B; as the subsisting contract between the parties, or otherwise upon an assumpsit to said firm.

15. The ninth and tenth prayers of the plaintiff ought to have been granted. The evidence of Mr. Heckert shows that " the embankment under the change of grade was 650 feet long and 100 feet wide, and there was much space wherein Howard

28*

could have placed the earth from his excavations to make the said embankment." Besides this, there was express directions from the engineer to the plaintiff below, to place the embankment (not against the crib, but) on each side of the centre-line of the embankment for the width of twenty-five feet on each side of said centre-line. His conduct in throwing the embankment against the outer crib was wilful and perverse.

The counsel for the defendants made the following references to authorities, to show that the exceptions were not sustainable :

On the First Exception. Act of Assembly of Maryland, 1817, c. 119; Peake's Evidence, 34.; Jones. v. Randall, Cowper's Rep. 17.

On the Second and Third Exceptions. Acts of Assembly of Maryland, 1831, c. 296; 1835, c. 93; 1837, c. 30; Agreement of Union, 1838, February 5th, (page 29th of the Record); 4 S. & R. 246; 2 Hill, 64; 1 Metcalf, 27; 5 Monroe, 530; 17 Conn. 345, 355; 18 Id. 138, 443; Fishmonger v. Robertson, 5 Mann. & Grang. 131, 192, 193.

On the Fourth Exception. Same authorities cited in support of the 4th instruction.

On the Sixth Exception. 1 Greenleaf's Evidence, sect. 553, p. 618; 1 Adolphus & Ellis, 19.

On the Seventh Exception. In support of the 1st, 2d and 3d instructions. Coke's Lit. Lib. 1, sect. 5, 36, (a.) note 222; 2 Leonard, 97; 1 Ventr. 257; 1 Levinz, 46; 1 Siderfin, 8; Carthew, 360; 3 Keble, 307; 1 Kyd on Corporations, 268.

In support of the 4th Instruction. Terry v. Dance,. 2 H. Black. 389; 1. East, 625, 631; 2 Johns. 272, 387; 5 Johns. 78; 15 Mass. 500; 19. Johns. 341; 2 Wash. C. C. Rep. 456; Campbell v. Jones, 6. T. R. 570; Fishmonger v. Robertson, 5 Mann. & Granger, 197; Howard v. Philadelphia Railroad Co. 1 Gill, 311; Goldsborough v. Orr, 8 Wheat. 217; 1 Williams's Saund. 320 b.; Pordage v. Cole, Id. 220, n. 4; Carpenter v. Creswell, 4 Bing. 409; Boon v. Eyre, 1 H. Bla. 273.

Mr. Justice CURTIS delivered the opinion of the court.

Sebre Howard brought his action of covenant broken, in the Circuit Court of the United States for the District of Maryland, and upon the trial, the defendants took seven bills of exception, which are here for consideration upon a writ of error. Each of them must be separately examined.

The first; raises the question, whether Howard could prove that a certain suit was pending in Cecil County Court by the testimony of the clerk of that court to the verity of a copy of the docket-entries made in that suit by him, as clerk.

It is not objected that a copy of the docket-entries was produced instead of the original entries, because no court is required to permit its original entries to go out of the custody of its own officers, in the place appointed for their preservation; but the objection is, that a formal record ought to have been shown. There are two distinct answers to this objection, either of which is sufficient.

By the act of Assembly of Maryland, (1817, c. 119,) the clerk of the County Court is not required to make up a formal record. The docket-entries and files of the court stand in place of the record. When a formal record is not required by law, those entries which are permitted to stand in place of it are admissible in evidence. Several judicial decisions in England have been referred to by the counsel of the plaintiff in error, to the effect, that the finding of an indictment at the sessions cannot be proved by the production of the minute-book of the sessions, from which book the roll, containing the record of such proceedings, is subsequently made up. See 2 Phil. Ev. 194. But the distinction between those cases and a case like this is pointed out in a recent decision of the Court of King's Bench in Regina v. Yeoveley, 8 Ad. & El. 806, in which it was held, that the minute-book of the sessions was admissible to prove the fact that an order of removal had been made, it appearing that it was not the practice to make up any other record of such an order; and Lord Denman fixes on the precise ground on which the evidence was admissible in this case, when he says, "the book contains a caption, and the decision of the sessions; and their decision is the fact to be proved."

So in Arundell v. White, 14 East, 216, the plaintiff offered the minute-book of the Sheriff's Court in London, containing the entry of the plaint, and the word "withdrawn," opposite to the entry, and proved it was the usual course of the court to make such an entry when the suit was abandoned by the plaintiff; it was held to be competent evidence to prove the abandonment of the suit by the plaintiff and its final termination. In Commonwealth v. Bolkom, 3 Pick. 281, it was decided that the minute-book of the sessions, showing the grant of a license to the defendant, was legal evidence of that fact, there being no statute requiring a technical record to be made up.

And in Jones v. Randall, Cowper's R. 17, copies of the minute-book of the House of Lords were admitted in evidence of a decree, because it was not the practice to make a formal record.

The principle of all these decisions is the same. Where the law, which governs the tribunal, requires no other record than the one, a copy of which is presented, that is sufficient. In

Maryland, no technical record was required by law to be made up by the clerks of the county courts; and, therefore, no other record than the one produced was needful to prove the pendency of an action in such a court.

But there is another point of view in which this evidence was clearly admissible.

The fact to be proved was the pendency of an action. An action is pending when it is duly entered in court. The entry of an action in court is made, by an entry on the docket, of the title of the case, by the proper officer, in the due course of his official duty. Proof of such an entry being made by the proper officer, accompanied by the presumption which the law entertains, that he has done his duty in making it, is proof that the action was duly entertained in court, and so proof that the action was pending; and if the other party asserts that it had been disposed of, at any particular time after it was entered, he must show it. The docket-entry of the action was therefore admissible for this special purpose, because it was the very fact which, when shown, proved the pendency of the action, until the other party showed its termination.

The second bill of exceptions was taken to the ruling of the court admitting a witness to testify that he was present at the trial of the above-mentioned case in Cecil County Court, in December, 1847, in which Sebre Howard and Hiram Howard were shown by the docket-entries to have been plantiffs, and the Wilmington and Susquehannah Railroad Corporation defendant; that the plaintiffs at that trial relied on a paper writing, shown to the witness, and set out in the bill of exceptions; that one of the counsel of the defendant had in his possession another paper writing, also shown to the witness, and being the deed declared on in this suit; and that the defendant's counsel handed this last-mentioned paper to the presiding judge, and spoke of it as the true and genuine contract between the parties.

To render the ruling, to which this bill of exceptions was taken, intelligible, it is necessary to state, that the Wilmington and Susquehannah Railroad Corporation was the defendant in that action, which was assumpsit, founded on the paper first spoken of by the witness, which did not bear the seal of the corporation; that by the act of Assembly of 1837, c. 30, the Baltimore and Susquehannah Company, the Baltimore and Port Deposit Company, and the Philadelphia, Wilmington, and Baltimore Company, were consolidated, under the name of the Philadelphia, Wilmington, and Baltimore Railroad Company, and that this action being covenant, against the Philadelphia, Wilmington, and Baltimore Railroad Company, and the plea *non est factum*, the plaintiff was endeavoring to prove, that the

paper declared on bore the corporate seal of the Wilmington and Susquehannah Railroad Company. This being the fact to be proved, evidence that the corporation, through its counsel, had treated the instrument as bearing the corporate seal, and relied upon it as a deed of the corporation, was undoubtedly admissible. It is objected that the parties to that suit were not the same as in this one; but this is wholly immaterial. The evidence does not derive its validity from any privity of parties. It tends to prove an admission by the corporation, that the instrument was sealed with its seal. It is further objected that the admission was not made by the defendants in this action, but by the Wilmington and Susquehannah Corporation. It is true the action in the trial of which the admission was made, being brought before the union of the corporations, was necessarily in the name of the original corporation; but as, by virtue of the act of union, the Wilmington and Susquehannah Company, the Baltimore and Port Deposit Company, and the Philadelphia, Wilmington, and Baltimore Company were merged in and constituted one body corporate, under the name of the Philadelphia, Wilmington, and Baltimore Railroad Company, it is very clear that at the time the trial took place in Cecil County Court, all acts and admissions of the defendant in that case, though necessarily in the name of the Wilmington and Susquehannah Company, were done and made by the same corporation which now defends this action. This exception must therefore be overruled.

The third exception is that the court permitted the deed to be read to the jury, although only vague and inconclusive evidence had been given, that it bore the corporate seal. We do not consider the evidence was vague, for it applied to this particular paper, and tended to prove it to be the deed of the company. Whether it would turn out to be conclusive, or not, depended upon the fact whether any other evidence would be offered to control it, and upon the judgment of the jury. But the deed was rightly admitted to be read as soon as any evidence of its execution, fit to be weighed by the jury, had been given by the plaintiff. It was argued that this evidence was not sufficient to change the burden of proof; and it is true that, upon the issue whether the paper bore the corporate seal, the burden of proof remained on the plaintiff throughout the trial, however the evidence might preponderate, to the one side or the other, (Powers v. Russell, 13 Pick. 69); but the court did not rule that the burden of proof was changed, but only that such *primâ facie* evidence had been given as enabled the plaintiff to read the deed to the jury.

The subject-matter of the fourth exception became wholly immaterial in the progress of the cause, and could not be assigned

for error, even if the ruling had been erroneous. Greenleaf's Lessee v. Birth, 5 Pet. 132. But we think the ruling was correct.

The fifth exception was taken to the refusal of the court to allow a question to be answered by James Canby, one of the defendant's witnesses. This witness had already testified as follows:

"Leslie and White were the first contractors, and they were induced to relinquish it at the instance of the board, and it was then let to Sebre and Hiram Howard; the terms and price, and other essentials of the contract, were entered into on the 12th July, 1836; and on that day two papers were prepared and were then signed by him, and also signed by Sebre Howard; and deponent, as president of the company, expressly directed the secretary, Mr. Brobson, that the seal of the company was not to be fixed to either paper until Hiram Howard signed and sealed both of them. The two papers, respectively marked A and B, being shown to him, he stated that they are the two papers to which he refers; that the impression of the seal on said paper A, is the seal of the Wilmington and Susquehannah Railroad Company, but that said seal was not placed there, he is very positive, at any time whilst he was president of said company, and was never placed there by his authority or by the authority of the board."

The defendant now insists he had a right to prove by this witness, that although the paper bore the corporate seal of the company, it was not its deed, because of an understanding between the witness and the plaintiff that Hiram Howard was to execute the paper. If the offer had been to prove that at the time the corporate seal was affixed, it was agreed the instrument should not be the deed of the company, unless, or until, Hiram Howard should execute it, the evidence might have been admissible. Pawling et al. v. The United States, 4 Cranch, 219; Derby Canal Company v. Wilmot, 9 East, 360; Bell v. Ingestre, 12 Ad. & El. N. s. 317. But the understanding, to which the question points, was prior to the sealing, and in no way connected with that act, of which the witness had no knowledge. It did not bear upon the question whether the instrument was the deed of the company, and was properly rejected.

The sixth exception rests on the following facts: The plaintiff offered to read the deposition of a deceased witness taken by the defendants in the case in Cecil County Court, to prove that the paper in question bore the seal of the corporation placed there by the deponent, an officer of the corporation. The defendant objected, but the court admitted the evidence. We consider the evidence was admissible upon two grounds; to

prove that in that case the defendant had asserted this instrument to be the deed of the corporation, and relied on it as such; and also, because the witness being dead, his deposition, regularly taken in a suit in which both the plaintiff and defendant were parties, touching the same subject-matter in issue in this case, was competent evidence on its trial. It is said the parties were not the same. But it is not necessary they should be identical, and they were the same, except that Hiram Howard was a coplaintiff in the former suit, and this diversity does not render the evidence inadmissible. 1 Greenl. Ev. 553 ; 1 Ad. & El. 19.

The seventh and last bill of exceptions covers nine distinct propositions given by the court to the jury as instructions. The first of the instructions excepted to, was as follows:

" If the jury find from the evidence that this instrument of writing was produced in court, and relied upon by the present defendant, as a contract under the seal of the Wilmington and Susquehannah Railroad Company, in an action of *assumpsit* brought by Sebre and Hiram Howard, against the last-mentioned company in Cecil County Court; and that the said suit was decided against the plaintiffs upon the ground that this instrument was duly sealed by the said corporation as its deed, then the defendant cannot be permitted in this case to deny the validity of said sealing, because such a defence would impute to the present defendant itself a fraud upon the administration of justice in Cecil County Court."

It is objected that this instruction applied the doctrine of estoppel, where the matter of the estoppel had not been relied on in pleading. The rules on this subject are well settled. If a party has opportunity to plead an estoppel and voluntarily omits to do so, and tenders or takes issue on the fact, he thus waives the estoppel and commits the matter to the jury, who are to find the truth. 1 Saund. 325 a., n. 4 ; 2 B. & A. 668 ; 2 Bing. 377 ; 4 Bing. N. C. 748. But if he have not opportunity to show the estoppel by pleading, he may exhibit the matter thereof in evidence, on the trial, under any issue which involves the fact, and both the court and the jury are bound thereby. 1 Salk. 276 ; 17 Mass. 369. Now the plea in this case was *non est factum*, which amounts to a denial that the instrument declared on was the defendant's deed at the time of action brought. If sealed and delivered, and subsequently altered, or erased, in a material part, or if the seal was torn off, before action brought, the plea is supported. 5 Coke, 23, 119 b.; 11 Coke, 27, 28; Co. Lit. 35 b., n. 6, 7. It follows that a replication to the effect that on some day, long before action brought, the instrument was the deed of the defendant, would be bad on demurrer, for it would not completely answer the plea.

The plaintiff cannot be said to have opportunity to plead an estoppel, and voluntarily to omit to do so, when the previous pleadings are such that if he did plead it, it would be demurrable.

Besides, a plea of *non est factum* rightly concludes to the country, and so the plaintiff has no opportunity to reply specially, any new matter of fact. He can only join the issue tendered, and if he were prevented from having the benefit of an estoppel, because he has not pleaded it, it would follow that the plaintiff can never have the benefit of an estoppel when the defendant pleads the general issue, for in no such case can he plead it. This was clearly pointed out in Trevivan *v.* Lawrence, 1 Salk. 276, where the court say, " that when the plaintiffs' title is by estoppel, and the defendant pleads the general issue, the jury are bound by the estoppel." And it is in this way that the numerous cases of estoppels *in pais* which are in the recent books of reports, have almost always been presented.

It is further objected, that the facts supposed in the instruction did not amount in law to an estoppel. We think otherwise. Hall *v.* White, 3 C. & P. 137, was detinue for certain deeds. The defendant wrote to the plaintiffs' attorney, and spoke of the deed as in his possession under such circumstances as ought to have led him to understand a suit would be brought upon the faith of what he said. Best, C. J., ruled: " If the defendant said he had the deeds, and thereby induced the plaintiffs to bring their action against him, I shall hold that they may recover, though the assertion was a fraud on his part." In Doe *v.* Lambly, 2 Esp. 635, the defendant had informed the plaintiffs' agent that his tenancy commenced at Lady-day, and the agent gave a notice to quit on that day. This not being heeded, ejectment was brought, and the tenant set up a holding from a different day. But Lord Kenyon refused to allow him to show that he was even mistaken in his admission, for he was concluded. Mordecai *v.* Oliver, 3 Hawks, 479 ; Crocket *v.* Lasbrook, 5 Mon. 530 ; Trustees of Congregation, &c. *v.* Williams, 9 Wend. 147, are to the same point.

These decisions go much further than this case requires, because the defendant not only induced the plaintiff to bring this action, but defeated the action in Cecil County Court, by asserting and maintaining this paper to be the deed of the company ; and this brings the defendant within the principle of the common law, that when a party asserts what he knows is false, or does not know to be true, to another's loss, and his own gain, he is guilty of a fraud ; a fraud in fact, if he knows it to be false, fraud in law, if he does not know it to be true. Polhill *v.* Walter, 3 B. & Ad. 114; Lobdell *v.* Baker, 1 Met. 201.

Certainly it would not mitigate the fraud, if the false assertion were made in a court of justice and a meritorious suit defeated thereby. We are clearly of opinion, that the defendant cannot be heard to say, that what was asserted on the former trial was false, even if the assertion was made by mistake. If it was a mistake, of which there is no evidence, it was one made by the defendant, of which he took the benefit, and the plaintiff the loss, and it is too late to correct it. It does not carry the estoppel beyond what is strictly equitable, to hold that the representation which defeated one action on a point of form should sustain another on a like point.

The next instruction is objected to on the ground that Hiram Howard ought to have been joined as a coplaintiff. By reference to the indenture, it will be seen that it purports to be made between Sebre Howard and Hiram Howard, of the first part, and the Wilmington and Susquehannah Railroad Company, of the second part. The covenants are not by or with these persons *nominatim*, but throughout the party of the one part covenants with the party of the other part. Sebre Howard alone and the corporation sealed the deed.

It is settled that if one of two covenantees does not execute the instrument, he must join in the action, because whatever may be the beneficial interest of either, their legal interest is joint, and if each were to sue, the court could not know for which to give judgment. Slingsby's case, 5 Coke, 18, b.; Petrie *v.* Bury, 3 B. & C. 353. And the rule has recently been carried so far as to hold, that where a joint covenantee had no beneficial interest, did not seal the deed, and expressly disclaimed under seal, the other covenantee could not sue alone. Wetherell *v.* Langton, 1 Wels. H. & G. 634. But this rule has no application until it is ascertained that there is a joint covenantee, and this is to be determined in each case by examining the whole instrument. Looking at this deed, it appears the covenant sued on was with "the party of the first part," and the inquiry with whom the covenant was made, resolves itself into the question, what person, or persons, constituted "the party of the first part," at the moment when the deed took effect?

The descriptive words, in the premises of the deed, declare Sebre and Hiram Howard to be the party of the first part; but, inasmuch as Hiram did not seal the deed, he never in truth became a party to the instrument. He entered into no covenant contained in it. When, in the early part of the deed, the party of the first part covenants with the party of the second part to do the work, it is impossible to maintain, that Hiram Howard is there embraced, under the words "party of the first part," as a covenantor. And when, in the next sentence, the party of the

second part covenants with the party of the first part to pay for the work, it would be a most strained construction to hold, that the same words do embrace him as a covenantee. There can be no sound reason for the construction, that the words party of the first part mean one thing, when that party is to do something, and a different thing, when that party is to receive compensation for doing it. The truth is, that the descriptive words are controlled by the decisive fact, that Hiram did not seal the deed, and so *error demonstrationis* plainly appears. An examination of the numerous authorities cited by the counsel for the plaintiff in error will show that they are reconcilable with this interpretation of the covenants; for, in all the cases in which one of the persons named in the deed did not seal, he was covenanted with *nominatim*. Our conclusion is, that the action was rightly brought by Sebre Howard alone.

The next instruction excepted to was as follows: " The omission of the plaintiffs to finish the work within the times mentioned in the contract, is not a bar to his recovery for the price of the work he actually performed; but the defendant may set off any damage he sustained by the delay, if the delay arose from the default of the plaintiffs."

The time fixed for the completion of the contract was the first day of November, 1836. The company agreed to pay twenty-six cents per cubic yard, in monthly payments, according to the measurement and valuation of the engineer. These monthly payments were made up to December, 1837; and when the contract was determined by the company, January 18th, 1838, under a power to that effect in the instrument, which will be presently noticed, there remained due the price of the work done in December, and on eighteen days in January.

The question is, whether the covenant to pay was dependent on the covenant to finish the work by the first day of November. So far as respects each monthly instalment, earned before breach of the covenant to finish the work on the first day of November, it is clear the covenants were independent. Or, to state it more accurately, the covenant to pay at the end of each month, for the work done during that month, was dependent on the progress of the work, so far as respected the amount to be paid; but was not dependent on the covenant to finish the work by a day certain. The only doubt is, whether, after the breach of this last-mentioned covenant, the defendants were bound to pay for work done after that time.

The is an apparent, and perhaps some real conflict, in the decisions of different courts, on this point. 2 Johns. 272, 387; 10 Johns. 203; 2 H. Bl. 380; 8 Mass. 80; 15 Mass. 503; 5 Gill

& Johns. 254.   We do not deem it needful to review the numerous authorities because we hold the general principle to be clear, that covenants are to be considered dependent, or independent, according to the intention of the parties, which is to be deduced from the whole instrument; and in this case we find no difficulty in arriving at the conclusion, that the covenants were throughout independent.   There are, in this instrument, no terms which import a condition, or expressly make one of these covenants in any particular dependent on the other.   There is no necessary dependency between them, as the pay for work done may be made though the work be done after the day. The failure to perform on the day does not go to the whole consideration of the contract, and there is no natural connection between the amount to be paid for work after the day, and the injury or loss inflicted by a failure to perform on the day.   Still it would have been competent for the parties to agree that the contractor should not receive the monthly instalment due in November, if the work should not be then finished, and that he should receive nothing for work done after that time.

But we find no such agreement.   On the contrary, the covenant to pay for what shall have been done during each preceding month is absolute and unlimited, and the parties have provided a mode of securing the performance of the work and the indemnification of the company from loss, wholly different from making these covenants in any particular dependent on each other. They have agreed, as will be presently more fully stated, that the company may declare a forfeiture of the contract in case the work should not proceed to their satisfaction, and may retain fifteen per cent. of each payment to secure themselves from loss.   Without undertaking to apply to this particular case any fixed technical rule, like that held in Terry v. Duntze, 2 H. Bl. 389, we hold it was not the intention of these parties, as shown by this instrument, to make the payment of any instalment dependent on the covenant to finish the work by the first day of November; and that consequently the instruction given at the trial was correct.

The sixth instruction, which is also excepted to, must be read in connection with the fifth and the provision of the contract to which they refer.   The contract contains the following clause :

"Provided, however, that in case the party of the second part shall at any time be of opinion that this contract is not duly complied with by the said party of the first part, or that it is not in due progress of execution, or that the said party of the first part is irregular or negligent, then, and in such case, he shall be authorized to declare this contract forfeited, and thereupon the same shall become null, and the party of the

first part shall have no appeal from the opinion and decision aforesaid, and he hereby releases all right to except to, or question the same in any place under any circumstances whatever; but the party of the first part shall still remain liable to the party of the second part for the damages occasioned by the said non-compliance, irregularity, or negligence."

The instructions thereon were:

5th. "If the defendant annulled this contract, as stated in the testimony, under the belief that the plaintiff was not prosecuting the work with proper diligence, and for the reasons assigned in the resolution of the board, they are not liable for any damage the plaintiff may have sustained thereby, even although he was in no default, and the company acted in this respect under a mistaken opinion as to his conduct."

6th. " But this annulling did not deprive him of any rights vested in him at that time, or make the covenant void *ab initio*, so as to deprive him of a remedy upon it for any money then due him for his work, or any damages he had then already sustained."

The law leans strongly against forfeiture, and it is incumbent on the party who seeks to enforce one, to show plainly his right to it. The language used in this contract is susceptible of two meanings. One is the literal meaning, for which the plaintiff in error contends, that the declaration of the company annulled the contract, destroying all rights which had become vested under it, so that if there was one of the monthly payments in arrear and justly due from the company to the contractor, and as to which the company was in default, yet it could not be recovered, because every obligation arising out of the contract was at an end.

Another interpretation is, that the contract, so far as it remained executory on the part of the contractor, and all obligations of the company dependent on the future execution by him of any part of the contract might be annulled. We cannot hesitate to fix on the latter as the true interpretation.

In the first place, the intent to have the obligation of the contractor, to respond for damages, continue, is clear. In the next place, though the contractor expressly releases all right to except to the forfeiture, he does not release any right already vested under the contract, by reason of its part performance, and *expressio unius exclusio alterius*. And finally, it is highly improbable, that the parties could have intended to put it in the power of the company, to exempt itself from paying money, honestly earned and justly due, by its own act declaring a forfeiture. The counsel for the plaintiff in error seemed to feel the pressure of this difficulty, and not to be willing to maintain that

vested rights were absolutely destroyed by the act of the company; and he suggested that though the covenant were destroyed, assumpsit might lie upon an implied promise. But if the intention of the parties was to put an end to all obligation on the part of the company arising from the covenant, there would remain nothing from which a promise could be implied; and if this was not their intention, then we come back to the very interpretation against which he contended; for if the obligation arising from the covenant remains, the covenant is not destroyed. We hold the instruction of the court on this point to have been correct.

The next instruction, excepted to, was in these words:— "The increased work occasioned by changing the width of the road and altering the grade having been directed by the engineer of the company under its authority, was done under this covenant, and within its stipulations, and may be recovered in this action, without resorting to an action of assumpsit."

The covenant of the plaintiff was "to do, execute, and perform the work and labor in the said schedule mentioned." And the schedule mentions "all the grading of that part of section 9, &c., according to the directions of the engineer," &c. We think this instruction was correct. The plaintiff in error insists that the covenant was to do the grading precisely as shown by a profile made before the contract was entered into. If this were so, the company would have been disabled from making any change either of width or grade, without the consent of the defendant. We do not think this was the meaning of the contract, and both the company and the contractor having acted on a different interpretation of it, the company must now pay for the increased work of which they have had the benefit.

The ninth instruction was as follows:

9th. "Also, if from any cause, without the fault of the plaintiff, the earth excavated could not be used in the filling up and embankments on the road and at the river, it was the duty of the defendant to furnish a place to waste it. And if the company refused, on the application of the plaintiff to provide a convenient place for that purpose, he is entitled to recover such damages as he sustained by the refusal, if he sustained any; and he is also entitled to recover any damage he may have sustained by the delay of his work or the increase of his expense in performing it, occasioned [by] the negligence, acts, or default of the defendant."

To this the plaintiff in error objects, "that it assumes that the company was bound to provide a place on which to waste the earth." The contract says the contractor is to place earth, not wanted for embankment, "where ordered by the engineer."

29*

He can rightfully place it nowhere until ordered by the engineer, and if such an order was refused, or delayed, and the contractor was thereby injured, he had a clear right to damages. It cannot be supposed such an order was to be given or obeyed, if obedience to it would be a trespass. Before giving it, the company was bound to make it a lawful order, the execution of which would not subject the parties to damages for a wrong, and therefore was bound to provide a place, and, of course, a reasonably convenient place as well as seasonably to give the order.

The plaintiff in error also excepted to the tenth instruction, which must be taken together with the clause of the contract to which it relates, to be intelligible. The contract contains the following provision :

" And provided, also, that in order to secure the faithful and punctual performance of the covenants above made by the party of the first part, and to indemnify and protect the party of the second part from loss in case of default and forfeiture of this contract, the said party of the second part shall, notwithstanding the provision in the annexed schedule, be authorized to retain in their hands, until the completion of the contract, fifteen per cent. of the money at any time due to the said party of the first part ; thus covenanted and agreed by the said parties, this twelfth day of July, 1836, as witness their seals."

The instruction was :

10th. " Also, the plaintiff is entitled to recover the fifteen per cent. retained by the company, unless the jury find that the company has sustained damage by the default, negligence, or misconduct of the plaintiff. And if such damage has been sustained, but not to the amount of fifteen per cent. then the plaintiff is entitled to recover the balance, after deducting the amount of damage sustained by the company."

It is argued that here is a stipulation that the fifteen per cent. may be retained by the company until the completion of the contract by the defendant ; that it never was completed by him, and so the time of payment had not arrived when this action was brought.

Now, it is manifest that one of the events contemplated in this clause was a forfeiture such as actually took place ; that in that event the contract never would be completed by the defendant, and so its completion could not with any propriety be fixed on as to the limit of time during which the company might retain the money, unless it was the intention of the parties that the fifteen per cent. so retained should belong absolutely to the company in case of a forfeiture of the contract. But the parties have not only failed to provide for such forfeiture of the fifteen

per cent., but have plainly declared a different purpose. Their language is, that this money is retained, " to indemnify and protect the party of the second part from loss, in case of default and forfeiture of this contract."

There is a wide difference both in fact and in law, between indemnity and forfeiture; yet it is the former and not the latter which the parties had in view. Whether an express stipulation for a forfeiture of this fifteen per cent. could have been enforced, it is not necessary to decide.

But when the parties have shown an intent to provide a fund for indemnity merely, the legal, as well as the just result is, that after indemnity is made and the sole purpose of the fund fully executed, the residue of it shall go to the person to whom it equitably belongs. Rightly construed the words, " until the completion of the contract," refer to the time during which all monthly payments were to be made, and give the right to retain the fifteen per cent. out of each and every payment, rather than fix an absolute limit of time during which these sums might be retained. In neither event, contemplated by this clause, would this limit of time be strictly proper. If a forfeiture of the contract took place, it was manifestly inapplicable; and if no forfeiture did take place, but damage were suffered by the company, from default of the contractor, equal to the fifteen per cent. it cannot be supposed their right to retain was to cease with the completion of the contract. This objection, therefore, must be overruled.

The plaintiff in error also excepts to the 12th instruction. We do not deem it needful to determine whether there was evidence to go to the jury, that the company did not use reasonable diligence to obtain a dissolution of the injunction, because we consider so much of the instruction as relates to this subject, to be a proper qualification of the absolute and peremptory bar, asserted in the first part of the instruction; and if the company desired to raise any question concerning the proper tribunal to decide on the matter of diligence, or respecting the evidence competent to justify a finding thereon, some prayer for particular instructions respecting these points should have been preferred. But we consider there was some evidence bearing on this question of diligence, and that it was for the jury and not the court to pass thereon.

Two objections are made to the thirteenth instruction. The first is, that this instruction assumed the existence of evidence, competent to go to jury, to prove that the defendants fraudulently terminated the contract under the clause which enabled them to declare it forfeited. To this objection, it is a conclusive answer that the defendants themselves prayed for an instruction sub-

stantially like that given.   The other objection is, that the jury were instructed to allow by way of damages, such profit as they might find the plaintiff had been deprived of by the termination of the contract by the defendants, if they should find the act of termination to be fraudulent.

It is insisted that only actual damages, and not profits, were in that event to be inquired into and allowed by the jury.   It must be admitted that actual damages were all that could lawfully be given in an action of covenant, even if the company had been guilty of fraud.   But it by no means follows that profits are not to be allowed, understanding, as we must, the term profits in this instruction as meaning the gain which the plaintiff would have made if he had been permitted to complete his contract.   Actual damages clearly include the direct and actual loss which the plaintiff sustains *propter rem ipsam non habitam.*

And in case of a contract like this, that loss is, among other things, the difference between the cost of doing the work and the price to be paid for it.   This difference is the inducement and real consideration which causes the contractor to enter into the contract.   For this he expends his time, exerts his skill, uses his capital, and assumes the risks which attend the enterprise. And to deprive him of it, when the other party has broken the contract and unlawfully put an end to the work, would be unjust.   There is no rule of law which requires us to inflict this injustice.   Wherever profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, or speculations, or states of the market, are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value, or cost.   See Masterton *v.* Mayor of Brooklyn, 7 Hill's R. 61, and cases there referred to.   We hold it to be a clear rule, that the gain or profit, of which the contractor was deprived, by the refusal of the company to allow him to proceed with, and complete the work, was a proper subject of damages.

We have considered all the exceptions; we find no one tenable, and the judgment of the court below is affirmed with costs.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel.   On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs and damages at the rate of six per centum per annum.