ALFRED A. OLDS & another *vs.* MAPES-REEVE
CONSTRUCTION COMPANY.

Hampshire. September 18, 1900. — October 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Breach of Contract — Profits — Damages.*

If B., who has contracted with C., breaks his contract with a sub-contractor, A.,
by which A. has agreed to do certain work for C., at a specified sum, and A.
then makes a new contract with C., to complete the work called for by A.'s con-
tract with B., and also to do certain other work, for a round sum agreed upon
between them, in an action by A., against B., for breach of the original contract,
A. is not required to allow the amount of the profits of the last contract with C.,
in diminution of the damages to which he would otherwise be entitled.

CONTRACT, for breach of an agreement. The case was re-
ferred to an auditor, who reported as follows: The defendant
was engaged in the erection of a building in Northampton,
and the plaintiffs agreed to furnish the marble work for the
building for $3,000. On November 9, 1896, after this contract
had been partially performed by the plaintiffs, a controversy
having arisen between the owner of the building and the de-
fendant, the defendant, without any fault of the plaintiffs,
ordered them to discontinue work and do nothing further under
the contract, and on November 11, 1896, the plaintiffs brought
this action. On the same day the plaintiffs entered into a
written contract with the owner of the building, as follows:
" We hereby agree to furnish and set up complete all marble
work to complete contract in dormitory building as per plans
and specifications and to the satisfaction of the architects for the
sum of $1,177.50. Also one wood mantel in matron's room same
design as in parlor with tile facing and frame and summer piece,
same cost as in bed-rooms for the sum of $125. The above
amounts to be paid within ten days of date of completion of
work."

This contract included a marble architrave, marble step and
riser, and labor of setting same, — in all $125, — not included
in the contract between the plaintiffs and the defendant. The
plaintiffs having received from the owner $1,052.50 " for doing

what was necessary to complete their contract with the defendant, I find that, for work done and materials furnished under this contract with the defendant, the plaintiffs are entitled to recover the difference between the original contract price ($3,000) and the amount received from Mr. Smith, [the owner,] to wit, the sum of $1,947.50." The plaintiffs also furnished for the building mantels, facings, and summer pieces at an agreed price of $1,225, and they are entitled to recover therefor that sum. It appeared that there was a large amount of cutting and fitting of marble necessary, partly on account of discrepancies between the measurements of the plans and of the rooms of the building as actually constructed, and partly on account of some changes in the building. " I find that the fair value of this work was $350, and the plaintiffs are entitled to recover that sum therefor in this action."

" The plaintiffs contended that under the first contract above mentioned (that for the marble work) they were entitled to recover the full contract price, $3,000, less the actual cost of completion, and that their right to recover in this action was not in any way affected by their contract with the owner for the completion of the original contract. If the court should be of the opinion that this contention is correct, I find that the actual cost of completing said original work was $717.27, and that the plaintiffs would be entitled to recover for work done and materials furnished under this contract $2,282.73, instead of $1,947.50 as above stated, the difference being $335.23, and that in that event the total amount which the plaintiffs are entitled to recover from the defendant is $3,857.73, with interest from the date of the writ less payments of $446.20."

As to the $3,000 contract, the plaintiffs asked *Stevens,* J., to rule as follows: The measure of damages is the difference between the contract price and the actual cost to the plaintiffs in finishing the work, after breach, according to the contract; and in that case the defendant cannot take any advantage of or derive any benefit from the contract between the plaintiffs and the owner. The judge refused so to rule; and ruled that the plaintiffs were entitled to recover $1,947.50 with interest and no more, as damages on the first or $3,000 contract. The plaintiffs alleged exceptions.

*J. B. O'Donnell*, for the plaintiffs.

*W. G. Bassett*, for the defendant.

KNOWLTON, J.   The only question argued in this case relates to the subject of damages.   The defendant, as a contractor, had agreed to erect on land of another a large building in Northampton.   The plaintiffs, as sub-contractors, had agreed with the defendant to furnish and set up all the marble work in the building for $3,000.   A controversy afterwards arose between the defendant and the owner of the building, on account of which the defendant ordered the plaintiffs to discontinue the work and do nothing further under the contract.   The defendant, having broken the contract, immediately became liable to the plaintiffs for damages, the measure of which was the difference between the sum which it would cost to complete the work in accordance with the contract and the sum which the plaintiffs were to receive.   *Fox* v. *Harding*, 7 Cush. 516, 523.   *Amos* v. *Oakley*, 131 Mass. 413.   *Cutter* v. *Gillette*, 163 Mass. 95.   *Tufts* v. *Bennett*, 163 Mass. 398.   *United States* v. *Behan*, 110 U. S. 338.   *Masterson* v. *Brooklyn*, 7 Hill, 61.   *Goodman* v. *Pocock*, 15 Q. B. 576.

This breach which fixed the liability occurred on November 9, 1896, and two days afterwards, on November 11, this suit was brought.   On the same day, whether before or after the commencement of the suit does not appear and is not material, the plaintiffs made a new contract with the owner of ·the building to complete the work called for by their contract with the defendant, and also to do certain other work, for a round sum agreed upon between them.   The profits on this last contract, as found by the auditor, were $335.23, and the only question before us is whether the plaintiffs are to allow the amount of these profits in diminution of the damages to which they would otherwise be entitled.

The rule which is applicable to one who is under a contract to render personal services, and who, being discharged without cause before the end of his term, sues for damages, requires him, in estimating the damages, to allow for his services during the unexpired term whatever he is able to obtain for them, or if damages are assessed before the end of the term, whatever he reasonably can be expected to obtain for them during the time

covered by the contract. That is, on the breach of the contract he is left with his personal services as his property, in his own control, and he must allow for them in the computation their fair value for such use as he is able reasonably to make of them. In estimating the damages in the present case the auditor found that the actual cost of completing the work after the breach of the contract was $717.27, although with such allowances as he made for work included in the plaintiff's contract with the landowner, which was not included in their contract with the defendant, he found that the plaintiffs received $1,052.50 for completing the work called for by the original contract. In making this estimate of the cost of completing the work, the auditor charged the plaintiffs with all labor and services which would have entered into it, whether personal to themselves or rendered by agents or employees, just as one under a contract to render personal services, when recovering damages for a broken contract, would be charged with the value of the personal services which remained unused after the breach of the contract. But there is this difference between the case of one who is discharged while under a contract to render personal services, and a case like the present. In the former case the person discharged, whose personal services come back to him, is bound to dispose of them in a reasonable way, so as to make the damages to the other party not unreasonably large, while, in a case like the present, one deprived of his contract is under no obligation to enter into new contracts with a view to make profits for the other party. In a contract of the kind before the court, personal services are not necessarily included. The labor or supervision may be personally performed by the contractor or may be furnished through agents or employees. In either case the value of it is all included for the benefit of the other party when the contractor is charged with the whole cost of completing the work, as an amount to be deducted from the contract price in estimating his damages. Since the damages properly are assessable in this way immediately after the breach of the contract, can it make any difference that the contractor afterwards makes a new contract with the owner which includes the unfinished work? In making this contract the plaintiffs did not include anything which originally belonged to the defendant in

specie under the original contract. Their agreement was not to render personal services, but only to accomplish a specific result. The plaintiffs were at liberty to leave this work entirely to the care of hired servants, and to take as many other contracts as they chose elsewhere, and to give their personal time and attention to any occupation that they might choose. The question is, whether the profits from the new contract with the landowner were a direct result of the defendant's breach of contract, or whether they came from an independent, intervening cause. It does not appear, and it is not to be assumed, that the plaintiffs were not competent to carry on several contracts at one time, and the making of profits on a new contract does not appear to be because of relief from the obligations of the old one. There is usually plenty of work to be contracted for, and the addition of one more possible job for which contractors may bid does not make the subsequent contract to do the work a direct result of the increase of opportunities for work. The addition of a new piece of work is merely a condition of the subsequent contract to do the work, and not a direct or proximate cause of it. Moreover, the making of such a contract involves many considerations besides the existence of the work to be done. There must be calculations and estimates. In making a contract of this kind there is always a risk of loss as well as a possibility of gain. To say nothing of the fact that the plaintiffs' new contract included work which was not included in the old one, the cost of which could be fixed only as a matter of estimate, this contract with the landowner was a new undertaking, in which the plaintiffs were under no obligation to engage, and which involved risks that they could assume for themselves alone. If the contract had resulted in a loss to them, they could not have charged the defendant with the loss, to the increase of their damages. As the contract resulted in a gain to them, there is no reason why the defendant should receive this gain in diminution of the damages for which it was liable. There is no privity between the defendant and the plaintiffs, or between the defendant and the landowner, in reference to the new contract. There was an independent arrangement made between the plaintiffs and the landowner, and the only relation which the defendant's breach of the former contract had to it was that it furnished one of the

conditions, namely, the work to be done, without which the new contract could not have been made. But the existence of this condition was not the cause of the contract, and the creator of this condition has no title to the fruits of the contract. If another person had taken this contract and made profits on it, as the plaintiffs did, it would hardly have been contended that the plaintiffs' damages were to be diminished on that account; or if the plaintiffs, instead of taking this contract after the breach of the former one, had gone elsewhere and taken another contract which afforded them similar profits, there would be no ground for a claim of the defendant to be allowed these profits in diminution of the damages.

We are of opinion that the ruling at the trial was erroneous, and that the plaintiffs' damages should have been assessed without reference to their profits obtained under the new contract with the landowner.                    *Exceptions sustained.*