## NORCROSS BROTHERS COMPANY *vs.* JULIAN W. VOSE.

Suffolk.   March 9, 1908. — May 21, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract*, Construction, Performance and breach, Implied.  *Damages.*

In an action by a contractor to recover a balance alleged to be due for the con-
struction of a factory building for the defendant under a contract in writing, in
which the defendant sought to recoup damages from the plaintiff for the plain-
tiff's delay in completing the building, the paragraph of the contract relied on
by the defendant for this purpose provided that the contractor should complete
the whole of the work by a day named, and that in the event of his failing to do
so he should allow and pay the owner $50 for every day after the date named
until the whole of the work was fully completed, with a provision that if the
contractor completed the work before the day named the owner should allow
and pay him $50 for every day before the date named that the work was fully
completed.  This was in substance the whole of the paragraph and there was no
provision in it for arbitration.  In a paragraph in regard to alterations there was
a provision for arbitration in case either party was dissatisfied with the decision of
the architect.  In a paragraph in regard to delay caused by the neglect or default
of the owner or by other causes named which were not the fault of the con-
tractor, there was a similar provision for arbitration.  A like provision for arbi-
tration was contained in still another paragraph in regard to the obligation of
the owner to provide all labor and materials not included in the contract in such
a manner as not to delay the progress of the work.  In the paragraph in regard
to the payments to be made by the owner to the contractor upon certificates of
the architect that such payments had become due there was no provision for
arbitration.  It appeared that the building was not completed until sixty-five
days after the day named for completion in the contract.  The defendant
claimed damages for the plaintiff's delay, and the plaintiff proposed that the
matter should be submitted to arbitration in the manner provided in the para-
graphs of the contract containing such provisions.  The defendant refused to
leave the question to arbitration.  *Held*, that a provision for arbitration could
not be imported into the paragraph providing for liquidated damages for the
owner in case of delay on the part of the contractor, and that submission to arbi-
tration was not a condition precedent to recoupment by the defendant of his
damages for such delay.

In an action by a contractor on a contract in writing, with a count on an account
annexed, to recover a balance alleged to be due for constructing a building on
land of the defendant, if it appears that the plaintiff constructed the building
but failed to complete it within the time required by the contract and that por-
tions of the work were defective, the plaintiff can recover on his account annexed
an amount not exceeding the agreed price diminished by the amount of pay-
ments and of all damages suffered by the defendant from the plaintiff's breaches
of the stipulations of the contract.

In an action by a contractor to recover a balance alleged to be due for the construc-
tion of a factory building for the defendant under a contract in writing, it
appeared that by the terms of the contract all payments were to be made " upon

written certificates of the architect to the effect that such payments have become due," that the final payment should "be made within thirty-five days after this contract is fulfilled," and "that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials." The plaintiff completed the building but failed to complete it within the time required by the contract and some of the work was defective. After the completion of the building the plaintiff sent to the defendant a bill for $16,690. This bill was returned to the plaintiff by the architect with the following indorsement upon it signed by the architect: "Approved for sixteen thousand six hundred nineteen dollars and ninety cents ($16,619.90) less the sum of allowance agreed upon." There were figures in pencil showing the deduction of $70.10. This bill was returned to the plaintiff enclosed with a letter from the architect, in which he referred to a letter from the plaintiff asking him to pass upon the questions at issue between the plaintiff and the defendant, the two main points of contention being in regard to defective concrete work and delay in the completion of the building, the architect in his letter naming $6,000 as his estimate of the amount of the allowance to be made for defective concrete work and $3,000 as his estimate of the amount to be allowed for delay, and stating at the conclusion of his letter, "Your bills are returned approved with the exception of three small items." The plaintiff contended that the written approval of the architect upon the plaintiff's final bill was a final certificate approving the payment of $16,619.90 and was conclusive as to the right of the plaintiff to receive that amount, and further, that, if this was not so, the architect's approval of the bill, taken together with his letter, was a final certificate that the allowance on account of defects in the concrete work should not be more than $6,000. *Held,* that the qualified approval of the architect on the plaintiff's bill was not a final certificate within the meaning of the contract, to be treated as conclusive evidence of performance, but that, even if it were given effect as a certificate, the architect's approval did not bind the defendant to the acceptance of either work or material which was not in accordance with the contract or preclude him from the recoupment of damages.

In an action by a contractor to recover a balance alleged to be due for the construction of a piano factory for the defendant under a contract in writing, where it appeared that the concrete floors of the building were defective and were not constructed in accordance with the specifications of the contract, and the defendant sought to recoup damages on this account, it was *held,* that the measure of damages to which the defendant was entitled in recoupment on this account was the difference between what the value of the floors would have been if they had been constructed in accordance with the specifications and their value as built and left by the plaintiff.

In an action by a contractor to recover a balance alleged to be due for the construction of a piano factory for the defendant under a contract in writing, where it appeared that the concrete floors of the building were defective and were not constructed in accordance with the specifications, and the defendant sought to recoup damages on this account, the jury were taken to view the concrete floors and had an opportunity to see the condition of the surface and the general character of the work. The judge in his charge to the jury directed their attention to the defendant's contention that the only way in which the floors could be rendered serviceable was to reconstruct the surface by putting on the finish called for by the contract. He then instructed the jury that, if they found that

resurfacing was not only a reasonable but a practical method of repairing the damage, their estimate of the cost of such resurfacing would be the measure of damages, but, if they deemed such repairs inexpedient or the evidence was insufficient to enable them to estimate the probable expense, they were to give the matter no further consideration. *Held*, that these instructions gave the plaintiff no cause for complaint.

CONTRACT to recover a balance of $17,994.14 alleged to be due under a contract in writing for the construction of a six story brick factory building on land of the defendant on Massachusetts Avenue at the corner of Magazine Street in Boston, with a second count upon an account annexed for the same sum of money. Writ in the Supreme Judicial Court dated January 19, 1904.

The defendant filed an answer containing a general denial and matter in recoupment, and also filed a declaration in set-off.

The contract declared on was as follows:

"This Agreement, made the thirtieth day of January in the year one thousand nine hundred and two by and between the Norcross Brothers Company, a corporation duly organized under the laws of the Commonwealth of Massachusetts, party of the first part (hereinafter designated the Contractor), and Julian W. Vose of Boston, County of Suffolk and said Commonwealth, party of the second part (hereinafter designated the Owner),

"Witnesseth that the Contractor, in consideration of the fulfillment of the agreements herein made by the Owner, agrees with the said Owner, as follows:

"Article I. The Contractor under the direction and to the satisfaction of Harrison H. Atwood, Architect, acting for the purposes of this contract as agents of the said Owner, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings prepared by the said architect for the construction and completion of a six story brick factory building with power and dry houses in connection therewith on land owned by the said Owner, and situated on Massachusetts Avenue, at the corner of Magazine Street (North) Ward 17, in said city of Boston, which drawings and specifications are identified by the signatures of the parties hereto.

"Article II. The Architect shall furnish to the Contractor such further drawings or explanations as may be necessary to

detail and illustrate the work to be done, and the Contractor shall conform to the same as part of this contract so far as they may be consistent with the original drawings and specifications referred to and identified, as provided in Art. I.

"It is mutually understood and agreed that all drawings and specifications are and remain the property of the Architect.

"Art. III. No alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the Architect, and when so made, the value of the work added or omitted shall be computed by the Architect, and the amount so ascertained shall be added to or deducted from the contract price. In the case of dissent from such award by either party hereto, the valuation of the work added or · omitted shall be referred to three (3) disinterested Arbitrators, one to be appointed by each of the parties to this contract; and the third by the two thus Chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expenses of such reference.

"Art. IV. The contractor shall provide sufficient, safe and proper facilities at all times for the inspection of the work by the Architect or his authorized representatives. He shall, within twenty-four hours after receiving written notice from the Architects to that effect, proceed to remove from the grounds or buildings all materials condemned by them, whether worked or unworked, and to take down all portions of the work which the Architect shall by like written notice condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications.

"Art. V. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the Architect, the Owner shall be at liberty, after ten days written notice to the Contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the Contractor under this contract; and if the Architect shall certify that such refusal, neglect or failure is

sufficient ground for such action, the Owner shall be at liberty to terminate the employment of the Contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Owner in finishing the work, such excess shall be paid by the Owner to the Contractor, but if such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner.   The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the Architect, whose certificate thereof shall be conclusive upon the parties.

" Art. VI.  The Contractor shall complete the whole of the work comprehended in this Agreement by September 1st, 1902, in the event of failure on the part of the Contractor to so complete the whole of said work at the time herein before stated, the contractor shall allow and pay the Owner at the rate of fifty dollars ($50.00) for each and every day after said September 1st, 1902, until the whole of said work is fully completed, provided that should the Contractor complete the whole of said work before September 1st, 1902, then the owner shall allow and pay the Contractor at the rate of fifty dollars ($50.00) for each and every day prior to said September 1st, 1902, that the said work is so fully completed.

" Art. VII.  Should the Contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the Owner, or the Architect, or of any other Contractor employed by the Owner upon the work, or by any damage which may happen by fire, lightning, earthquake or cyclone, or by the abandonment of the work by the employees through no default of the Contractor, then the time herein fixed for the completion of the work shall be extended for a period

equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the Architect within twenty-four hours of the occurrence of such delay. The duration of such extension shall be certified to by the Architect, but appeal from his decision may be made to arbitration, as provided in Art. III of this contract.

" Art. VIII. The Owner agrees to provide all labor and materials not included in this contract in such manner as not to delay the material progress of the work, and in the event of failure so to do, thereby causing loss to the Contractor, agrees that he will reimburse the Contractor for such loss; and the Contractor agrees that if he shall delay the material progress of the work so as to cause any damage for which the Owner shall become liable (as above stated), then he shall make good to the Owner any such damage. The amount of such loss or damage to either party hereto shall, in every case, be fixed and determined by the Architect or by arbitration, as provided in Art. III of this contract.

" Art. IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the Owner to the Contractor for said work and materials shall be ($135,000.00), One hundred and thirty five thousand dollars subject to additions and deductions as hereinbefore provided, and that such sum shall be paid in current funds by the Owner to the Contractor in installments, as follows: ninety per cent of the value of work performed and materials delivered at the site, to be paid in monthly payments or at such other times as may be mutually agreed upon by the Owner and Contractor.

" The final payment shall be made within thirty-five days after this contract is fulfilled.

" All payments shall be made upon written certificates of the Architect to the effect that such payments have become due.

" If at any time there shall be evidence of any lien or claim for which, if established, the Owner of the said premises might become liable, and which is chargeable to the Contractor, the Owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there

prove to be any such claim after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the Contractor's fault.

" Art. X. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials.

" Art. XI. The Owner may during the progress of the work maintain full insurance on said work, in his own name and in the name of the Contractor, against loss or damage by fire.   The policies shall cover all work incorporated in the building, and all materials for the same in or about the premises, and shall be made payable to the parties hereto, as their interest may appear.

" Art. XII. The said parties for themselves, their heirs, executors, administrators and assigns, do hereby agree to the full performance of the covenants herein contained.

" In Witness Whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written.

" The Norcross Brothers Co.   [seal]

By Freelon Morris   [seal]

Julian W. Vose   [seal]

" In presence of            ."

The account annexed to the declaration in set-off was as follows:

" Norcross Brothers Company.

" To Julian W. Vose Dr.

| | | |
|---|---|---|
| Item 1. | Overtime or overlap in not completing work as required by Article VI of contract Sept. 1, 1902 to Nov. 5, 1902 66 days @ $50.00 . . . . . . . . . . . | $3,300 00 |
| Item 2. | 259 perch of block stone foundations saved by alterations in drawings and specifications by architect, @ $6.00 . . . . . | 1,554 00 |
| Item 3. | Interest on $4,854.00 from Dec. 10th, 1902, to Jan. 19, 1904 . . . . . . . . | 322 79 |
| Item 4. | Total . . . . . . | $5,176 79 " |

The case was referred to James D. Colt, Esquire, as auditor. He filed a report, making the findings stated at the beginning of the opinion. The case was tried before *Rugg*, J., with a jury.

At the request of the defendant the jury viewed the concrete floors in the defendant's factory. The plaintiff introduced in evidence the contract, printed above, upon which the action was brought, and also the specifications. The plaintiff read the auditor's report, and rested. The defendant introduced evidence to show the defective character of the concrete work in the building and the amount of delay for which the plaintiff was responsible.

The facts reported by the auditor on which the plaintiff founded its contention, that the architect had made a final certificate under article ten of the contract, were as follows:

On February 3, 1903, the following bill was sent to the defendant:

" Worcester, Mass., Feb. 3, 1903.

"Vose & Sons Piano Co.,

" To the Norcross Brothers Co., Dr.

| | | | | | |
|---|---|---|---|---|---|
| 1902. | Nov. 24 | Bill rendered . . . . . . | | | $16,532 82 |
| 1903. | Jan. 29 | " " | voucher attached | | 97 67 |
| | Feb. 3 | " " | " " | | 27 50 |
| | " " | " " | " " | | 32 01 |

$16,690.00 "

On March 9 the architect returned this bill, having deducted $70.10 from the total (as appeared by his figures in pencil) and having written the following approval on the face of the bill:

" Approved for sixteen thousand six hundred nineteen dollars and ninety cents ($16,619.90) less the sum of allowance agreed upon.

" Harrison H. Atwood, Arch't."

The bill was returned with a letter written by the architect.

On March 2 the plaintiff, by Mr. O. W. Norcross, wrote a long letter to the architect, reciting claims made by Mr. Vose for damages resulting from faulty work of Simpson Brothers, and for an allowance for delay in completion of the building, and denying that the delay was due to any act or neglect of the Norcross Brothers Company, or that it was in any way responsible therefor. The letter went on to state in detail a large

number of causes of delay directly attributable to the defendant or his architect, admitted that Simpson Brothers caused a part of the delay, and asked that the subject be reviewed and an early decision rendered.

The letter with which the architect returned the bill to the plaintiff was as follows:

"March 9, 1903.

"Norcross Bros. Co.

Tremont Building, Boston.

"Gentlemen:— In pursuance with the written request contained in your letter to me of March 2d for a written opinion as the Architect of the Vose Building relative to the question at issue between your Company and the Owner pending a final settlement of the contract, I find but two main points of contention both of which are substantially acknowledged by each party at interest;

"1st. — The defective concrete work.

"2nd. — Overlap on time allowance for finishing the building under the contract.

"Upon the first item defective concrete work, it is agreed that the only question is the amount of allowance; without going into detail I should place this at the sum of six thousand dollars ($6,000.00)

"Upon the second item that of overlap on time allowance, I should place this at sixty days, allowing therefore the sum of three thousand dollars.   ($3000.00)

"It is my opinion that of this time allowance Simpson Bros. Co. are directly responsible for fifty days of the overlap by their act of neglect in not commencing their part of the work promptly at the time the building was ready, also, by unnecessary and needless delays after the commencement of their work and by the employ of negligent and incompetent workmen.

"Your bills are returned approved with the exception of three small items.

"Very truly yours,
"Harrison H. Atwood."

Other facts found by the auditor are described in substance in the opinion.

No evidence was introduced by the defendant tending to con-

trovert the finding of the auditor that the defendant refused to arbitrate the question of delay nor tending to controvert any of the facts found by the auditor upon the question of the defendant's refusal to arbitrate that question.

The plaintiff introduced no evidence in rebuttal and at the close of all the evidence asked the justice to rule as follows:

1. As the plaintiff was not satisfied with the finding of the architect as to the amount to be allowed the defendant for delay in the construction of the building, and as it requested a reference of the matter to arbitration in accordance with the provisions of the contract, the submission of this matter to arbitration by the terms of the contract was a condition precedent to the defendant's right to receive or recover any deduction or allowance for such delay. As the defendant entirely refused to comply with this provision in the contract as to arbitration, though such arbitration was requested and demanded by the plaintiff, he cannot, as a matter of law, receive or recover any deduction or allowance whatsoever on account of the delay.

2. The written approval of the architect upon the plaintiff's final bill is a final certificate of the architect within the meaning and requirement of the contract for the sum of $16,619.90. As it does not appear and is not claimed that this certificate was obtained by any fraud or collusion on the part of the architect or the plaintiff, it is conclusive as to the performance by the plaintiff of the work covered by the contract. The defendant is not, therefore, as a matter of law, entitled to receive or recover any allowance or deduction on account of the concrete work or any other part of the building.

3. The written approval of the architect on the plaintiff's final bill, taken together with the architect's letter of March 9, is a final certificate of the architect, within the meaning and requirement of the contract, for the sum of $10,619.90, aside from allowance for delay. As it does not appear and is not claimed that this certificate was obtained by any fraud or collusion on the part of the architect or the plaintiff, it is conclusive as to the performance by the plaintiff of the work covered by the contract. The defendant is not, therefore, as a matter of law, entitled to receive or recover any further allowance or de-

duction on account of the concrete work or any other part of the building.

The justice refused to make any of these rulings and gave other instructions to the jury.

The plaintiff excepted to the refusal of the justice to rule as requested and also excepted to the rule of damages laid down by the justice in his charge to the effect that if the jury found it was a reasonable thing for the defendant to take off the present surface of the floors and put on in its place a new surface of the character called for by the contract, they would be entitled to allow him, as damages for the failure of the plaintiff to construct floors as called for by the contract, the cost of putting on such a new surface, and then they could estimate that cost, in the absence of other evidence, from what they saw at the view of the premises.

The justice submitted to the jury the question, " How many days, if any, was the completion of the contract delayed by reason of acts for which the plaintiff was responsible? "  To this question the jury answered, " forty-five days."

The jury returned a verdict for the defendant ; and at the request of the parties the justice reported the case for determination by the full court.  If no error was disclosed the verdict was to stand.  If the plaintiff's first request for instructions should have been granted, and no other error appeared, judgment was to be entered for the plaintiff in the sum of $2,250, together with interest from December 10, 1902.  If an error was disclosed in the refusal to give the second or the third instructions requested by the plaintiff or in the rule of damages laid down in the part of the charge to which the plaintiff excepted, a new trial was to be granted.

*W. I. Badger & W. H. Hitchcock*, for the plaintiff.

*C. B. Southard*, (*T. Parker* with him,) for the defendant.

BRALEY, J.  This is an action brought to recover a balance claimed to be due for the erection of a building, to be used in the defendant's business as a manufacturer of pianos.  The auditor to whom the case was referred having reported, that with the exception of the item for drafting plans, the plaintiff was entitled to the amount shown by the declaration, less certain deductions for defective work and materials and for failure to

finish the building within the time named in the contract, it relied unreservedly upon the report, and, not having introduced evidence to control or vary the findings, they must be deemed to have been regarded as the basis upon which the plaintiff's right to recover finally rested. The allowance for changes in the foundations, caused by a departure from the original plans, having been conceded, the declination of the defendant to accept the amounts allowed for delay and imperfect construction of the concrete floors narrowed the controversy before the jury to these issues, respectively raised in the first item of the declaration in set-off and by the claim for recoupment. R. L. c. 174, § 1. *Blackler* v. *Boott,* 114 Mass. 24, 27. *Ford* v. *Burchard,* 130 Mass. 424. *Blood* v. *Wilson,* 141 Mass. 25.

If the evidence introduced in support of the counterclaim was competent, the jury were warranted in returning a verdict in favor of the defendant, as they could find the entire damages suffered from a failure to comply with the contract more than exceeded the entire amount demanded. The plaintiff, while taking no exception to the admission of this evidence, and offering no rebuttal, then requested the justice to rule, by the terms of the contract, the plaintiff having been dissatisfied with the decision of the architect as to the number of days chargeable to it for delay in the construction of the building and having requested arbitration of the dispute, which the defendant refused, the defendant could not recover damages from the plaintiff, as an award was a condition precedent to the right to bring suit. It also asked for a further ruling, that as the architect, under the authority conferred upon him to approve payments, had given a final certificate for the full amount demanded, the claim in recoupment could not be maintained, or, if this ruling was refused, then the defendant was bound by the allowance for defective work made by the architect, and the plaintiff was entitled to recover this balance without further deductions. We are of opinion that the denial of these requests was right. It may be assumed from the reference in the closing sentences of articles seven and eight, that the parties intended to incorporate the provisions as to arbitration found in article three, and make them applicable in the same manner to this part of the contract. If the entire contract is examined, it is seen that it

was not the purpose of the parties, except as to the requirements of article five, to make the action taken by the architect upon the various details of construction as the work progressed final, and in this respect the contract differs from those construed in *National Contracting Co.* v. *Commonwealth,* 183 Mass. 89, 92, *Norcross* v. *Wyman,* 187 Mass. 25, and *White* v. *Abbott,* 188 Mass. 99, where the determination of the architect or supervising engineer upon such matters was held to be conclusive. See *Hebert* v. *Dewey,* 191 Mass. 403, 408. Instead, when called upon to act, his decision, if unsatisfactory to either party, was to be referred to arbitration for final settlement. But article six, upon which the set-off rests, contains no reference to either mode of adjustment. It stipulated that, if the completion of the building should be delayed beyond the time named, liquidated damages at the rate of $50 a day should be paid by the plaintiff, " until the whole of said work is fully completed." *Hall* v. *Crowley,* 5 Allen, 304. If not conceded, it was undisputed that the limit had been exceeded by sixty-five days, before the building was finished. While the auditor's decision exonerated the defendant from any breach of article eight, the plaintiff has constantly asserted that much of this delay was caused by the defendant's neglect, and default in performance, for which under the provisions of article seven he should be held liable. By construing articles six, seven and eight as dependent, and providing for a settlement without litigation of all questions of amount and value, it seeks to read into article six the arbitration clause. But if under article seven the defense of the loss of time attributable to the defendant's failure in providing materials and labor to be furnished by him was fully available under the auditor's finding, that the limitation within which the demand must be presented had been waived, the plaintiff had expressly agreed to pay a fixed amount for each day's delay, from which it had not been released. This provision was not made dependent upon the agreement for an extension of time, but is distinct. It is not a promise to pay whatever sum either the architect or arbitrators might determine, but to pay at the rate named for a definite period, even if that period might be shortened, if the plaintiff found it necessary, in avoidance, to resort to the provisions for its protection contained in article seven. The

principal agreement to erect and finish the building for the consideration the defendant agreed to pay, and the agreement to pay liquidated damages under article six if the defendant claimed them, were independent provisions to neither of which was attached a stipulation that until the amount due had been settled by arbitration no suit for either the price or the damages should be maintained. An award not having been made a condition precedent to the right to sue, each was at liberty to resort to the courts for a settlement of their differences. *Nute* v. *Hamilton Ins. Co.* 6 Gray, 174, 181. *Rowe* v. *Williams*, 97 Mass. 163. *Hood* v. *Hartshorn*, 100 Mass. 117. *White* v. *Middlesex Railroad*, 135 Mass. 216, 219. *Reed* v. *Washington Ins. Co.* 138 Mass. 572, 576. *Clement* v. *British American Assurance Co.* 141 Mass. 298. *Hutchinson* v. *Liverpool & London & Globe Ins. Co.* 153 Mass. 143. *Lamson* v. *Prudential Ins. Co.* 171 Mass. 433. *Norcross* v. *Wyman, ubi supra. Hebert* v. *Dewey, ubi supra. Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1, 4. *Hamilton* v. *Home Ins. Co.* 137 U. S. 370. *Scott* v. *Avery*, 5 H. L. Cas. 811. *Collins* v. *Locke*, 4 App. Cas. 674. *Viney* v. *Bignold* 20 Q. B. D. 172. *Dawson* v. *Fitzgerald*, 1 Ex. D. 257.

The plaintiff, although declaring on the contract, could recover only on the account annexed, and the defendant not having been deprived of the protection and benefit of the contract, the amount recoverable is limited to the agreed price, after deducting payments and all damages suffered from the plaintiff's breach of its various stipulations. *Hayward* v. *Leonard*, 7 Pick. 180. *Blood* v. *Wilson*, 141 Mass. 25. *Burke* v. *Coyne*, 188 Mass. 401, 404.

By article nine, all instalments as they accrued were payable only on the architect's certificate, and by article ten, while the certificate for the final payment is to be regarded as "conclusive evidence of the performance of the contract," even then "no payment should be construed to be an acceptance of defective work or imperfect materials." It was uncontroverted that, some time after asserting that it had completed the work, the plaintiff mailed to the defendant a bill purporting to be a statement of the full amount payable in final settlement but containing no deductions as to any of the disputed matters. While this bill was held by the architect, to whom it had been submitted, the

architect received a letter from the plaintiff setting forth the grounds of the defendant's dissatisfaction, with a statement in reply, and requesting, that their differences might be reviewed, and decided.   Having received full instructions as to the particulars of their dispute, the qualified indorsement of approval which appears upon the bill should be read in connection with the reply to the plaintiff's request.   It is evident that, with these papers before him, he reached the conclusion that upon both grounds a very substantial sum should be deducted, and, after having audited and approved the items with certain minor exceptions, owing to the radical disagreement between them, left the final amount to be adjusted by the parties, if they settled according to his recommendations.   Manifestly, this restricted indorsement could not have been intended, nor can it fairly be construed within the meaning of the contract, as a final certificate, which should be treated as conclusive evidence of a full performance.   But, if given effect as a certificate, the architect's approval did not bind the defendant to the acceptance of either work or material not in accordance with the contract or preclude him from the recoupment of damages.

The instructions given as to the measure of damages also are said to have been in part erroneous, and misleading.   The finding of the auditor that the concrete floors were not constructed in accordance with the specifications was unquestioned.   Not only was the alignment imperfect and the workmanship poor, but the material used for topping, instead of being composed of the ingredients specified, showed the presence of foreign substances, which not only detracted from the appearance of the floors but being imbedded in their surface became loose as the floors were used, leaving small cavities, which as a source of dust seriously depreciated the value of the building for use as a piano factory.   The plaintiff having failed to comply with the contract, and the defective work not having been accepted, the defendant could recoup as damages the difference between the value of the floors if they had been built as designed, and their value as built and left by the plaintiff.   *Burke* v. *Coyne*, 188 Mass. 401, 405, and cases cited.   *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356.

This general rule was given and fully explained.   The jury,

however, had viewed the premises, and what they had seen as to the condition of the surface and general character of the work being evidence of its value to be considered with other testimony, the judge directed their attention to the defendant's position, that the only feasible way in which the floors could be rendered serviceable was to reconstruct the surface by putting on the finish called for by the contract. *Smith* v. *Morse,* 148 Mass. 407, 409, 410. They then were instructed, if they found that, instead of using the floors as they had been left, resurfacing was not only a reasonable but a practical method of repairing the defects, their estimate of the cost would measure the extent of the damages. But if they deemed such repairs to have been inexpedient, or the evidence was insufficient to enable them to estimate the probable expense, they were to give the matter no further consideration. These instructions being the equivalent of saying that, the plaintiff having broken the contract, the damages suffered by the defendant were measured by the difference between the value of the floors when finished in accordance with the specifications and their value in the condition in which the plaintiff left them, the plaintiff has no just cause for complaint. *Veazie* v. *Hosmer,* 11 Gray, 396. *Olds* v. *Mapes-Reeve Construction Co.* 177 Mass. 41, 43. *Hebb* v. *Welsh,* 185 Mass. 335, 337. By the terms of the report the verdict is to stand.

*So ordered.*