**GRINNELL CO., Inc., v. VOORHEES et al.***

(Circuit Court of Appeals, Third Circuit. September 30, 1924.)

No. 3133.

**1. Damages ⬤⟲124(3)—Measure for breach of contract for doing work.**

The measure of damages for breach of a contract by plaintiff to do a specified work for a specified price, where plaintiff has been prevented from completing the work through fault of defendant, is generally, for the work done, such proportion of the entire price as the fair cost of that work bears to the fair cost of the entire work, and in respect to the work not done such profit as plaintiff would have realized in doing it.

**2. Damages ⬤⟲62(4)—Duty to minimize damages held not applicable to breach of contract for doing specified work.**

The rule that, on breach of a contract, it is the duty of the injured party to minimize his damages, *held* not applicable to a contract by plaintiff to do a specified work, not involving personal services, where the work was stopped through fault of the defendant, and the sub-

·Certiorari granted 45 S. Ct. 125, 69 L. Ed. ——.

ject-matter of the contract was not in plaintiff's possession, but in such case the damages became due immediately on breach of the contract, and defendant is not entitled to have them diminished by the profits which plaintiff made under a subsequent contract with another to complete the work.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

The Grinnell Company, Inc., appeals from an order of the District Court disallowing its claim against C. I. Voorhees and another, as receivers of the Willys Corporation. Reversed, and new trial granted.

Samuel Koestler and Leavitt & Ulbrich, all of Elizabeth, N. J. (Edgar W. Shaw, of Providence, R. I., and Stamler, Stamler & Koestler, of Elizabeth, N. J., of counsel), for appellant.

Howard C. Gilmour, of Newark, N. J., and McDermott, Enright & Carpenter, of Jersey City, N. J., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

DAVIS, Circuit Judge. On February 27, 1920, the Grinnell Company entered into a contract with the Willys Corporation, wherein it agreed to equip the property of the Willys Corporation at Elizabeth, N. J., with a system of Grinnell fire extinguishing apparatus for the sum of $243,614 to be paid in monthly installments on the 5th day of each month to the amount of 85 per cent. of the price of materials delivered and work performed during the month preceding. The corporation seemed to be hard pressed for money and did not keep up its payments, and in December, 1920, made its last payment, though the work of installing the system continued until September 15, 1921, when it was suspended. The Grinnell Company filed a mechanic's lien claim for the amount of the work done which was agreed to be 78 per cent. Insolvency proceedings were then instituted against the Willys Corporation and receivers were appointed for it. The lien claim, $139,616.57, for the 78 per cent. of the work done, was paid, and the Grinnell Company filed with the receivers in July, 1922, its claim of $24,919.94 for profits which it alleges it would have made, had it been allowed to complete the contract. This claim was rejected by the receivers, and an appeal was taken to the District Court from the action of the receivers, and the matter was referred to John W. Emery, Esquire, as special master to ascertain and report the amount, if any, due the Grin-

nell Company. He reported that there was a breach of contract, but the company was entitled to only ·6 cents damages. Exceptions to the master's report were filed in the District Court, but they were overruled and the report confirmed. The Grinnell Company appealed to this court on the ground that its claim for profits should have been allowed.

The Durant Motor Company purchased the Willys Corporation' property and employed the Grinnell Company to complete the fire extinguishing system. There seems to be no serious dispute as to the amount of the profits claimed, but they were disallowed on the ground that the Grinnell Company made practically the same profits under the Durant contract that it would have made under the original contract and it should not make the two profits on the same work, for it was the duty of the Grinnell Company to minimize the damages after the breach, and this it did by entering into the contract with the Durant Company.

After the receiver took over the Willys Corporation, the Grinnell Company several times offered to go ahead and complete the work according to the original contract, but the receivers finally "determined not to complete the sprinkler system."

[1] "Generally, when it can be determined what, according to the contract, the plaintiff would receive for that which he has done and what profit he would have realized by doing that which, without fault, he has been prevented from doing, then these sums become the legal, as they are the just, measure of his damages." Kehoe v. Rutherford, 56 N. J. Law, 23, 26, 27 A. 912, 913. The rule was differently stated by Mr. Justice Dixon in the above case as follows: "When, under a valid contract to perform a specified work for a specified price, the plaintiff has done part and has been prevented from performing completely through the fault of the defendant, the legal measure of the plaintiff's damages is generally, for the work done, such a proportion of the entire price as the fair cost of that work bears to the fair cost of the whole work, and, in respect to the work not done, such profits as he would have realized by doing it." Wilson v. Borden, 68 N. J. Law, 627, 630, 54 A. 815; Cavanagh v. Ridgefield, 94 N. J. Law, 147, 109 A. 515; Masterton v. Mayor, etc., Brooklyn, 7 Hill (N. Y.) 61, 42 Am. Dec. 38; Dillon v. Anderson, 43 N. Y. 231, 237. The difference between the cost of doing the work and the price to be paid for it is the contractor's profit and is the induce-

ment and real consideration which causes him to enter into the contract. For this he expends his time, exerts his skill, uses his capital, and assumes the· risk which attends the enterprise. "To deprive him of it, when the other party has broken the contract and unlawfully put an end to the work, would be unjust." Philadelphia, Wilmington & Baltimore Railroad Co. v. Howard, 54 U. S. 307, 344, 14 L. Ed. 157; United States v. Behan, 110 U. S. 338, 4 S. Ct. 81, 28 L. Ed. 168.

Under this rule of law, the Grinnell Company was entitled to the allowance of the profits which it would have made if it had completed the contract. These constitute the measure of damages which immediately became due on the breach of the contract. Southern Pacific Co. et al. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451.

[2] The further · question arises as to whether the profits made on its contract with the Durant Motors Company shall be applied to the diminution of the damages to which the receivers are liable on the contract with the Willys Corporation on the principle that it was the duty of the Grinnell Company to use every reasonable effort to minimize the damages.

In contracts for personal services the rule invoked by the receivers is applicable. In such contracts it is the duty of the plaintiff to use every reasonable effort and proper opportunity to secure another contract in order to mitigate the damages caused by the breach because the plaintiff's services are in his possession. They are his own and he can dispose of them as he pleases. Olds v. Mapes-Reeve Co., 177 Mass. 41, 58 N. E. 478; Heavilon v. Kramer, .31· Ind. 241; Hendrickson v. Anderson, 50 N. C. 248.

There is another class of contracts which also require the plaintiff to make proper and reasonable efforts to render the injury caused by the breach as small as possible. These are cases in which the subject-matter of the contract remains in, or comes into, the possession of the plaintiff and without due diligence on his part additional damages after the breach may result. "Public interest and sound morality accord with the law in demanding this; and if the injured party, through negligence or willfulness, allows the damages to be unnecessarily enhanced, the increased loss justly falls upon him." Hamilton et al. v. McPherson et al., 28 N. Y. 72, 84 Am. Dec. 330. In this case the defendants were common carriers and contracted with the plaintiffs to carry for them

a large quantity of oats from Perth to Oswego, Canada, in the month of May. They did not carry them until the 10th or 12th of July. The oats became heated and moldy during the hot weather of June and July. This could have been prevented by stirring and properly caring for the oats. This duty was on the plaintiffs or their agents in whose custody the oats were. The court held that the damages to the oats could not be charged to the defendants because the oats were in the possession of the plaintiffs, who did not use proper and reasonable exertions in caring for them following the failure of the defendants to carry them at the time fixed by the contract. Another case illustrating this principle is Graham v. Eiszner, 28 Ill. App. 269, 277, in which beer was delivered in leaky barrels. The court held that recovery could not be had for the loss of beer after the leakage was known. A party may not stand by and see his property go to waste and recover damages therefor when by reasonable exertion and expense he might save it. Again, in the case of Hitchcock v. Hunt, 28 Conn. 343, the court held that in an action of assumpsit for barrels and pork, the defendant may not rely on his warranty that the barrels would not leak and claim damages as set off for the loss of the pork because the barrels did leak, when by reasonable care he could have had the barrels repaired, if practicable, or, if not, procured new and good ones and repacked the pork. The expense of repair or new barrels and repacking would have been proper elements of damages which he could have set off but not the loss of the pork. In the case of Dillon v. Anderson, 43 N. Y. 231, the defendant entered into a contract with plaintiff for the construction of a pair of boilers for his steamboat, Mary Powell. After work had been begun and some material purchased, defendant notified plaintiff that he had sold the boat and that the contract was rescinded, but that he "would make plaintiff whole for any loss he might suffer." But the plaintiff refused to stop, but proceeded with the work and bought material which the court said he wasted "in the punching, chipping and cutting in the process of their manufacture." The defendant refused to pay certain sums of money which became due under the contract. The court held that the defendant was liable for the loss due to the breach of the contract, which included the profits that plaintiff would have made, if the contract had been fully performed, but the damages did not include the waste

and expenses incurred after notice of the rescission of the contract.

But a different rule of law is applicable in manufacturing contracts and contracts for specific work where personal services are not involved and the subject-matter of the contract is not in the possession of the plaintiff. There are decisions to the contrary, but we think that sound reason, wise business policy, and the weight of authority do not require the plaintiff to enter into other contracts, assume the risk, use his skill, and employ his capital for the benefit of the defendant whose fault caused the damage. The law either does or does not require the plaintiff to do so. It would not be just to give the defendant the benefit of a good contract and not charge him with the loss of a bad one when plaintiff had honestly used his skill, time, and capital. Consequently on the breach of such contracts, the defendant is not entitled to the benefit of any other contract into which the plaintiff may enter within the period it would ordinarily require for the performance of the breached contract. Olds v. Mapes-Reeve Construction Co., supra; Sullivan v. McMillan, 37 Fla. 134, 19 So. 340, 53 Am. St. Rep. 239; Graves v. Hunt, 8 N. Y. St. Rep. 308. On the breach of such contracts the claim of the plaintiff accrues at once and the law does not inquire into later events. Olds v. Mapes-Reeve Co., supra; Southern Pacific Co. et al. v. Darnell-Taenzer Lumber Co. et al., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451.

Counsel for the receivers contend that the case of Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 7 S. Ct. 875, 30 L. Ed. 967, is authority for their contention. In that case there was an allowance of the profits made on that part of the steel manufactured and sold after the breach of the contract, and judgment was accordingly entered; but the question here raised was before neither the trial court nor the Supreme Court. The question as to the proper measure of damages was as to whether or not the plaintiff should have manufactured all the steel and sold it in the market at Chicago, the place the rails were to be delivered, and then demanded the difference between the market and contract price. The court said that the rule of damages adopted there was that laid down in the case of Philadelphia, Wilmington & Baltimore Railroad Co. v. Howard, supra; but that case did not touch the question here involved, and we have not been referred to any case, nor have we found any by independent investigation,

where the Supreme Court has laid down the law on this question.

The contract here did not involve personal services, nor was the subject-matter of the contract in the possession of the Grinnell Company. It was therefore erroneous to apply the profits derived from the contract with the Durant Company to the diminution of damages caused by the breach of Willys Corporation.

The decree of the District Court is reversed, and a new trial granted.