**COONEY INDUSTRIAL TRUCKS, INC., Plaintiff, Appellant,**

v.

**TOYOTA MOTOR SALES, U.S.A., INC., Defendant, Appellee.**

No. 97–1981.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1998.

Decided Feb. 25, 1999.

Thomas S. Francis with whom William M. Clark and Law Offices of Thomas S. Francis were on brief for appellant.

William N. Berkowitz with whom Daniel L. Goldberg, David Yamin, Bingham Dana LLP, and David D. Laufer were on brief for appellee.

Before SELYA, Circuit Judge, ALDRICH and CAMPBELL, Senior Circuit Judges.

ALDRICH, Senior Circuit Judge.

In this action Cooney Industrial Trucks, Inc. (CITI) sued Toyota Motor Sales, U.S.A., Inc. (Toyota) for breach of contract and unfair business practices during the course of a franchise relationship. Following trial and receipt of the jury's answers to special questions, one of which, under Mass.G.L. ch. 93B, favored CITI, but another of which was that CITI suffered no damages, the court ruled for Toyota. We affirm.

Since 1970, CITI purchased and resold Toyota forklifts pursuant to consecutive dealer agreements, the last of which was executed on October 21, 1992. This agreement allowed CITI to sell equipment from other manufacturers but required it, by December

31, 1993, to equal or exceed, and thereafter maintain, Toyota's national retail market share. When that date arrived, CITI's market share was 7.7%, well below Toyota's national market share of just over 15%.

In early 1994, Toyota removed New Hampshire from CITI's Area of Primary Responsibility, a change authorized by the dealer agreement, because of CITI's inadequate sales performance in that state. Then, on August 15, 1994, Toyota advised CITI that, despite CITI's poor sales performance, it was willing to offer a new four-month dealer agreement that would include the same sales performance requirements but, unlike the 1992 dealer agreement, would not provide for the automatic granting of a six-year agreement if CITI met the stated market share. If CITI met those requirements, however, Toyota would consider offering another long-term dealer agreement. CITI failed to execute the proposed four-month agreement before the previous contract's original end date, September 30, 1994, and the franchise relationship terminated, after a two-month unilateral extension by Toyota, on November 30, 1994.

After deciding to reject Toyota's offer, Mr. Cooney, CITI's owner and president, made contact with Mitsubishi Caterpillar (Caterpillar), another manufacturer, to discuss the possibility of CITI becoming a dealer of Caterpillar forklifts. Caterpillar and CITI ultimately executed a sales and service agreement on November 7, 1994. According to Mr. Cooney, he never had an intention to represent Toyota and Caterpillar at the same time, and he negotiated this agreement in an attempt to mitigate whatever damage CITI would sustain as a result of Toyota's actions.

In fact, CITI's operations under the Caterpillar contract were, allegedly, better than with Toyota. CITI requested the court to charge as follows:

> Gains made by the injured party on other transactions after the breach are never to be deducted from the damages that are otherwise recoverable, unless such gains

could not have been made, had there been no breach.[1]

Why it wanted the jury to be told of the "unless" portion does not appear; it was its position that it did not apply. Thereafter, the court put a special question to the jury, in effect applying it:

> The law imposes a duty upon every person to take reasonable steps to mitigate, or avoid altogether, damages. Under the law, a plaintiff cannot recover damages that it has successfully avoided through such efforts.
>
> .    .    .    .    .
>
> If you find that [CITI] successfully mitigated or avoided losses by its acquisition and operation of the Caterpillar dealership you may not award as damages any losses so avoided.

The jury so answered, awarding no damages.

At a post trial hearing the court spelled out its thinking: CITI had "benefitted rather than sustained any loss or harm from accepting a franchise from Caterpillar that prohibited CITI from representing at the same time any competitor of Caterpillar, including defendant Toyota." Thus the special question was predicated on an implied ruling, or conclusion, that CITI fit the "unless" provision because, but for Toyota's breach and departure, its presence would have prohibited the Caterpillar contract. The case hangs on the correctness of that conclusion.

■ We consider first some legal principles. To begin at the beginning, the court was correct in saying that the law imposes on a plaintiff the duty to take reasonable steps to mitigate—meaning reduce or offset—damage. However, the duty applies only when the defendant's breach created the opportunity to take those steps.

If a defendant had agreed to pay for plaintiff's personal services and then rejected the contract, by freeing plaintiff's time the breach created the opportunity to sell his services to someone else, and the plaintiff

---

1. This language, hereinafter the mitigation rule, came from A. Corbin, *Contracts* § 1041 (1964). *See also Restatement (Second) of Contracts* § 350 cmt. b (1981); *Gillentine v. McKeand*, 426 F.2d 717, 724 n. 24 (1st Cir.1970) (citing *Hall v. Paine*, 224 Mass. 62, 65, 112 N.E. 153, 155 (1916)).

would have the duty to make a reasonable attempt to do so. If, however, plaintiff was a stockbroker, and defendant's failure to place orders would not have created an opportunity to deal with other customers, defendant's breach afforded him nothing; he would have had no duty. Hence the mitigation rule, footnote 1, *ante,* which we accept. As the Supreme Judicial Court of Massachusetts has said, "[i]t is not the policy of our law to award damages which would put a plaintiff in a better position than if the defendant had carried out his contract." *Ficara v. Belleau,* 331 Mass. 80, 82, 117 N.E.2d 287, 289 (1954). Failing to deduct from a plaintiff's award those gains he could not have made had the defendant not breached would, of course, violate this principle. So we must ask the question: If there had been no breach, could CITI have kept Toyota and, at the same time, made the profitable contract with Caterpillar?

■ CITI correctly asserts that the Toyota contract had not forbidden its dealing with Caterpillar. Recognizing that there were two sides, CITI's brief noted that Caterpillar allowed it to carry competing lines, "if certain conditions were met." The conditions were these:

> Dealer [CITI] . . . will not display, inventory, demonstrate, or sell [competing goods] except (i) by an entity separate from Dealer, (ii) under a trade name which is different and distinct from that of Dealer, (iii) in facilities separate and distinguishable from those of Dealer, and (iv) by employees other than persons who are also employed or otherwise furnish personal services to Dealer.

In its reply brief CITI is reduced to claiming that these conditions could be satisfied by creating a subsidiary company:

> The exception specifically allows CITI, through a wholly-owned subsidiary, under a different name, in a separate facility, and with separate employees to sell competitive products.

We are not told why CITI shortened the actual wording and substituted "and with separate employees" for "and (iv) by employees other than persons who are also employed by or *otherwise furnish personal services to Dealer*" (emphasis added). We would read the emphasized words to mean that Mr. Cooney could not even be an unpaid officer of the subsidiary. A greater difficulty, it is not clear from its quoted sentence where CITI would place the subsidiary. Is Caterpillar to contract with CITI, with Toyota to shift to the subsidiary? It is hard to visualize Toyota accepting such an arrangement. Equally, we cannot think that a prosperous company like Caterpillar would itself deal with Cooney through some isolated, hypothetical subsidiary. The district court was right in holding that CITI contracted with Caterpillar only by reason of Toyota's breach and disappearance. Hence the mitigation rule's "unless" clause applies.

We would suggest, further, that even if Caterpillar, as well as Toyota, had no objection to competition, it would have been totally impractical for CITI to be a dealer for both manufacturers simultaneously. As we have seen, Toyota had a minimum production requirement that CITI was not meeting. Can it be thought that it could have taken on another substantial dealership in such circumstances? Mr. Cooney's statement that he had never intended being a dealer for both manufacturers simultaneously was more than a thought; it was a recognition of impossibility.[2] We can only think of the present lawsuit as a flat attempt to make simultaneous, double collections. CITI's unfairness complaint, that it alone bore the risk of the Caterpillar operation's not being successful, overlooks the fact that if it had been a failure, Toyota's damage liability would not have been offset. What is unfair is CITI seeking to have it both ways.

---

**2.** This circumstance, in large part, distinguishes this case from *Olds v. Mapes–Reeves Const. Co.,* 177 Mass. 41, 58 N.E. 478 (1900), upon which CITI principally relies. We note, first, that later cases cast doubt on the decision. But putting aside the singular proposition that a subcontractor could contract with the owner of property to do the same construction work contemplated by a prior contract between the sub and the general contractor and still recover in full on the breached prior contract, the case before us is different because CITI, unlike the sub in *Olds,* clearly lacked the capability to work with anyone else at the same time that it worked with Toyota.

*Attorneys' Fees*

The concept that a plaintiff who has recovered no damages or other relief should receive attorneys' fees is so unusual that we need a clear showing to support CITI's contention that the legislature was so anxious to pursue business wrongdoing that it wished to reward discoverers even if they had not been harmed themselves. This is far too substantial a matter to depend on legal argument; we depend on elementary language.

> Ch. 93B § 12A reads, in part, as follows: Section 12A. Any franchisee or motor vehicle dealer who suffers any loss of money or property, real or personal, as a result of [listed acts] may bring an action in the superior court for damages and equitable relief, including injunctive relief.

Plainly this means that a plaintiff must show loss to itself, not merely the occurrence of a wrongful act. Plainly, also, such loss is a predicate for attorneys' fees. Section 12A continues:

> If the court finds for the franchisee or motor vehicle dealer in any action commenced hereunder, that there has been a violation of sections three to eleven, inclusive, or of any rule or regulation issued under paragraph (c) of section three, such franchisee or motor vehicle dealer shall, *in addition to any other relief provided for by this section* and irrespective of the amount, if any,[3] in controversy, be awarded reasonable attorneys' fees and costs; .... (emphasis added)

Something cannot be "in addition" if there was nothing preceding. *Cf. Jet Line Services, Inc. v. American Employers Ins. Co.,* 404 Mass. 706, 718, 537 N.E.2d 107, 115 (1989) ("[T]he reference to an award 'in addition to other relief' indicates that relief solely in the form of attorneys' fees may not be had."). Any other result would change the whole concept of the statute.

*Affirmed.*

---

3. We reject CITI's attempt to construe the added words "if any" as referring to more than claims for equitable relief.